## Commonwealth *vs.* Howard Hamilton.

Suffolk. October 7, 1997. - November 5, 1997.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Marshall, & Ireland, JJ.

*Practice, Criminal,* Disclosure of evidence, Severance, Mistrial, Argument by prosecutor, Instructions to jury, Capital case. *Evidence,* Fingerprints, Bias of government witness. *Witness,* Bias, Impeachment.

A criminal defendant demonstrated no prejudice from the judge's denial of his motion to exclude inculpatory fingerprint evidence or for a two-week continuance necessitated by the Commonwealth's late production of the evidence on the day of trial, where the judge granted a two-day continuance and funds for the defendant to retain a fingerprint expert and where defense counsel did not seek any further delay. [70-71]

At a criminal trial, the judge should have allowed defense counsel to inquire of the sole identification witness about a pending charge against the witness in order to show motive in cooperating with the prosecution, however, where the witness's pretrial, pre-charge statements were consistent with his testimony at trial identifying the defendant and where the witness was impeached with the inconsistencies in his statements, the exclusion of the evidence of the pending charge did not require a new trial. [72-74]

At a murder trial, there was no basis for a mistrial because of alleged improprieties in the closing argument by the codefendant's counsel [74], or because of the prosecutor's allegedly inappropriate remarks about the victim in his opening which were properly addressed by the judge's instructions [74], or because of the prosecutor's uncalled for appeal for sympathy in closing argument, which amounted to a rhetorical flourish and was not prejudicial [75].

In a murder case, the jury instructions were correct and provided no basis for reversal. [75]

Indictments found and returned in the Superior Court Department on June 27, 1990.

The cases were tried before *Robert W. Banks*, J.

*Charles W. Rankin* for the defendant.

*Lisa M. Scalcione*, Assistant District Attorney, for the Commonwealth.

Greaney, J. A jury found the defendant, Howard Hamilton,

and a codefendant, Richard D. Brooks (who were tried together as joint venturers) guilty of murder in the first degree by reason of deliberate premeditation. Both were also convicted of unlawfully carrying a firearm, of assault and battery by means of a dangerous weapon, and of armed assault with intent to murder.[1] Represented by new counsel on appeal, the defendant, Hamilton, raises several issues. His two principal issues concern the Commonwealth's late disclosure of fingerprint evidence and a limitation of cross-examination of an important Commonwealth witness for bias. We conclude that these issues do not provide a basis for a new trial. The remaining issues concern statements made in closing arguments by the codefendant's trial counsel, and in the opening and closing remarks of the prosecutor, and assertions of error in the judge's instructions to the jury. These issues furnish no basis for a new trial. We direct the entry of a judgment for the defendant on the carrying charge, see note 1, *supra*. There is no reason to exercise our authority pursuant to G. L. c. 278, § 33E, and, accordingly, we affirm the defendant's remaining convictions.

The facts that could have been found by the jury are set forth in detail in the opinion deciding the appeal of the codefendant, *Commonwealth* v. *Brooks*, 422 Mass. 574, 575-576 (1996). As background to this appeal, we set forth the following. On the night of June 2, 1990, and into the early morning hours of June 3, 1990, a group of five young men were gathered on the porch of a house at 7 Mount Everett Street in the Dorchester section of Boston. They had walked to a nearby Chinese restaurant and bought food. On the way back from the restaurant, a small red automobile with the codefendant Brooks in the passenger seat slowly passed the group twice. As the men socialized on the porch, the same red automobile passed the house. Shortly

---

[1]Although the cases of the defendant and codefendant, Brooks, were tried together, their cases were severed on appeal. We upheld the judgments of conviction entered against Brooks in *Commonwealth* v. *Brooks*, 422 Mass. 574 (1996).

The indictment charging the defendant with unlawfully carrying a firearm specified "a handgun, from which a bullet could be discharged, the length of said firearm being less than sixteen inches." The Commonwealth concedes on appeal that it did not prove that the handgun carried by the defendant had a barrel length of less than sixteen inches and, as a consequence, the defendant's motion for a required finding of not guilty should have been allowed on the charge. We accept the Commonwealth's concession.

thereafter, three men wearing hooded sweatshirts and identified as the codefendant Brooks, the defendant, and one Michael Osborne, approached the house from the direction the red automobile had taken and stood on the sidewalk in front of the porch. Ryan Moore was on the porch and saw the defendant point a gun and begin shooting toward the porch. In the gunfire that followed,[2] the victim was killed and two other men were wounded. After the shooting, a witness who lived near 7 Mount Everett Street saw three men rush to get into a small red automobile that had the engine running; one of the men wearing a hooded sweatshirt yelled, "Hurry up, let's get the heck out." The red automobile, which had been stolen, was later recovered by the police. Two fingerprints found on the automobile were later identified as the defendant's. Osborne's fingerprints were also found on the automobile.[3]

1. Prior to trial, the defendant's motion for discovery was allowed which requested, among other matters, production of the results of any scientific tests that might be introduced by the Commonwealth in evidence. On the day scheduled for trial, the prosecutor told the defendant's trial counsel that she had just received a report from the identification unit of the Boston police department. The report indicated that two of the fingerprints found on the red automobile had been identified as the defendant's. The defendant's trial counsel moved to exclude the fingerprint evidence because of its last-minute production, or for a two-week continuance, so that the evidence could be assessed for reliability and a new trial strategy considered. The defendant's trial counsel explained that she had prepared a defense of mistaken identification; that, in her opinion, the Commonwealth had but a single witness (Ryan Moore) who would identify the defendant; that no corroboration existed for Moore's identification; and, if the fingerprint evidence was admitted, she would need time to consider presenting a "diminished capacity defense."

In response to this argument, the judge granted a two-day

---

[2] There was evidence that at least two guns had been fired at the scene. Ten .32 caliber spent bullets or cartridges and one .38 caliber spent bullet were recovered. Additionally, a magazine clip for a .22 caliber semiautomatic rifle was found on the sidewalk.

[3] The defendant's brief advises us that the cases against Osborne and another defendant were concluded by the entry of guilty pleas to manslaughter and other crimes.

continuance, and went on to rule that he would approve funds allowing the defendant to retain a fingerprint expert to examine the reliability of the evidence. The judge then restricted the prosecutor from mentioning the evidence in her opening statement. The judge also advised the defendant's trial counsel that another continuance would be granted during the trial if any fingerprint expert retained by the defendant needed more time to complete examination of the evidence. On this record, the defendant argues that the judge's denial of the request for exclusion of the fingerprint evidence or a two-week continuance constituted an abuse of discretion which requires a new trial. We disagree.

As the defendant correctly recognizes, the judge possessed considerable discretion in dealing with the problem created by the prosecution's late disclosure of the fingerprint evidence. See Mass. R. Crim. P. 14 (c) (1) and (2), 378 Mass. 874 (1979); *Commonwealth* v. *Baldwin*, 385 Mass. 165, 177 (1982). When the ground for a continuance or exclusion of evidence involves late disclosure by the prosecution, without any showing of bad faith on its part (as is the case here), a defendant is required to show material prejudice from the disclosure before a new trial can be considered. See *Commonwealth* v. *Donovan*, 395 Mass. 20, 24 (1985); *Commonwealth* v. *Costello*, 392 Mass. 393, 398 (1984); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 149-150 (1980), cert. denied, 451 U.S. 973 (1981).

No showing of such prejudice has been made by the defendant. The judge granted time as well as the means for the defendant's trial counsel to evaluate thoroughly the fingerprint evidence. He also restrained the prosecutor from mentioning the evidence in her opening statement, and stated that an additional continuance could be granted during the trial if the defendant's trial counsel needed more time to deal effectively with the evidence. These are among the types of remedies that have been found sufficient to negate any prejudicial effect from delayed disclosure of evidence. See *Commonwealth* v. *Costello*, *supra* at 399-400 (no prejudice from late disclosure of inculpatory evidence where judge suspended trial for one day so expert could examine bloodstain); *Commonwealth* v. *Cundriff*, *supra* at 150 (no prejudice from late disclosure of inculpatory evidence where judge continued case for one day, and defendant did not request more time for investigation); *Commonwealth* v. *Fossa*, 40 Mass. App. Ct. 563, 569 (1996) ("a brief continuance for

investigation may sufficiently render a clear Commonwealth discovery violation nonprejudicial"). It is an indication that prejudice was negated when the defendant's trial counsel stated that she was ready for trial after the two-day continuance and did not seek any further delay when the fingerprint evidence was offered by the prosecution on the fifth day of the trial.

The defendant's argument that material prejudice occurred is not improved by his contention about a "diminished capacity" defense.[4] The defendant's trial counsel offered no factual basis at any time before or during the trial to support an issue as to the defendant's mental impairment. The claim now made on appeal, that such an issue might properly have been raised, is speculative.[5] From all that appears in this record, the defendant decided to accept the fingerprint evidence as reliable and to proceed with his planned defense that Ryan Moore was not credible and had misidentified him.

2. As has been mentioned, Ryan Moore identified the defendant, the codefendant Brooks, and Michael Osborne as the three men who stood on the sidewalk, and specifically identified the defendant as having pointed a gun and fired shots at the men on the porch. Although one other witness besides Moore also identified Brooks as one of the men at the scene, Moore was the only witness to identify the defendant. Trial counsel for the codefendant Brooks sought to show bias in Moore's testimony by bringing to the jury's attention during cross-examination the fact that, after the incident, but before the commencement of the trial, Moore had been charged with possession of a class B controlled substance with intent to distribute. At the prosecutor's request, the judge held a side bar conference. The prosecutor, referring to *Commonwealth* v. *Haywood*, 377 Mass. 755, 758-763 (1979), argued to the judge that Moore

---

[4]"[T]here is no 'diminished capacity' defense in this Commonwealth." *Commonwealth* v. *Parker*, 420 Mass. 242, 245 n.3 (1995). We do recognize evidence of a defendant's mental impairment or intoxication as relevant to the issues of intent and knowledge where a defendant is charged with crimes requiring proof of such elements. See *Commonwealth* v. *Sires*, 413 Mass. 292, 299 (1992).

[5]In her written motion to exclude the fingerprint evidence or for a continuance, the defendant's trial counsel stated: "Now the defense may choose to pursue other possible defenses. Specifically, the defense may choose to pursue a *Bowden*-type defense." See *Commonwealth* v. *Bowden*, 379 Mass. 472 (1980). No mention was made in the motion itself of a mental impairment claim.

"has previously given numerous statements prior to [the controlled substances] complaint . . . and . . . there would be absolutely no reason for him at this juncture to expect that he would receive any promise, reward or inducement, and, in fact, he has been told there is none." The judge ruled that trial counsel for Brooks could only ask Moore whether he had received any promises, rewards, or inducements for his testimony without any reference to the pending criminal charge. Trial counsel for Brooks objected to the ruling, but did not pursue the issue any further by inquiring of Moore in the manner approved by the judge. The Commonwealth agrees that, although the issue was raised by trial counsel for Brooks, it has been preserved on appeal for the defendant. The defendant argues that the judge's ruling violated his right to confront an important witness and, consequently, rendered his trial unfair.

The general rule is clear. A "defendant [is] entitled as of right to question [a] witness about [a] pending criminal [charge] in order to show . . . motive in cooperating with the prosecution." *Commonwealth* v. *Connor*, 392 Mass. 838, 841 (1984), and cases cited. "The possibility that a prosecution witness is hoping for favorable treatment on a pending criminal charge is sufficient to justify inquiry concerning bias, even if the Commonwealth has offered no inducements to the witness." *Commonwealth* v. *Henson*, 394 Mass. 584, 587 (1985). See *Commonwealth* v. *Barnes*, 399 Mass. 385, 392 (1987). On proper occasion, however, a judge may limit such an examination. "A voir dire showing of consistency between a witness's trial testimony and his statements made before any basis for bias existed may justify a judge's discretionary denial of the right to impeach for bias (*Commonwealth* v. *Haywood, supra* at 762-763), but a showing of inconsistency is not a precondition to the exercise of the right to impeach for bias on the basis of pending charges." *Commonwealth* v. *Henson, supra* at 589-590.

The judge should have allowed the inquiry in accordance with the general rule, or, at the very least, conducted a voir dire to establish a factual basis for the sound exercise of his discretion in keeping with the narrow exception permitted by the *Haywood* case. The judge's ruling, allowing Moore only to be questioned about inducements, did not foreclose the cross-examination entirely. However, by prohibiting any reference to Moore's pending charge, the proposed cross-examination was rendered largely ineffectual for the purpose of showing bias.

We are not persuaded, however, that the ruling necessitates a new trial. It is important whether the record shows that Moore may have embellished his identification of the defendant after he had been charged with the unlawful possession of a controlled substance. The defendant argues that there was a material change in Moore's identification testimony. He points to Moore's direct trial testimony that, when he was running into the house and up the stairs after the shooting started, he shouted, "Call the police, Howie and them are shooting." ("Howie" being a reference to the defendant). Moore claimed that he told the police officers and Detective Timothy Callahan, who investigated the shooting, that he had said this on the night of the murder, but the statement does not appear in Moore's recorded statement to the police, nor did he testify to this in front of the grand jury. Moore was impeached during cross-examination about these omissions. However, the record establishes no material deviation in Moore's identification of the defendant.

Moore was interviewed by Detective Callahan shortly after the incident, and he gave Callahan the full names of two assailants and the partial name of a third man. He also furnished physical descriptions of the assailants. Although in his direct examination Callahan was not permitted by the judge (perhaps improperly) to state the names he had been given by Moore, the direct testimony of Moore and Callahan clearly suggest that one of the named assailants was the defendant who was known to Moore because he had been at Moore's home and had met Moore on more than one occasion. This point was made explicit in Detective Callahan's redirect examination when he testified that Moore had in fact identified the defendant, by at least his first name, as the man he had seen in front of the house at 7 Mount Everett Street firing a gun.

Further, Moore told Detective Callahan shortly after the murder that he knew where the assailants lived. Based on this information, Moore was taken by Callahan to the various addresses he (Moore) had identified. One stop was at a house at 6 Longfellow Street in Dorchester, which Moore identified as the home of "Howie." Detective Callahan later went to the home and asked of "Kevin Hamilton and an uncle" whether "Howie" was there because a murder warrant for the defendant was outstanding, and the police wanted to speak with him. The jury could have inferred that Callahan was told that the defendant

was not home. There clearly exists in the record sufficient consistency between Moore's pretrial identification of the defendant and his testimony at trial to establish that the otherwise unsatisfactory handling of the impeachment issue does not require a new trial.[6]

3. The defendant's remaining arguments do not require extensive discussion.

(a) The judge did not err in denying the defendant's motion for a "severance" or a "mistrial" because of alleged improprieties in the closing argument by trial counsel for the codefendant Brooks. The isolated reference to the defendant's "statements" in that argument could not reasonably be considered to be a comment on his silence. Read in context, trial counsel for Brooks was advising the jury to consider the case against his client and the defendant separately. Further, the reference in the closing argument of Brooks's trial counsel to the Commonwealth's evidence against the defendant (which did not misstate the evidence) did not undermine the defendant's case. The argument was made to support Brooks's claim that he was not involved in a joint venture, and the argument was not inconsistent with the defendant's claim that he had been the subject of misidentification.

(b) The judge properly denied the motion for a mistrial in connection with portions of the prosecutor's opening statement that allegedly attempted to create sympathy for the victim. The jury were entitled to know something about the victim and his intentions. The judge's instructions on the role of opening statements and on the requirement that the jury decide the case objectively and without regard to various extraneous influences, kept the matter in perspective. The instructions negated any debatable excessiveness in the prosecutor's opening or thereafter in the Commonwealth's evidence.

---

[6]Another Commonwealth witness who lived at 7 Mount Everett Street, and who was upstairs putting her children to bed at the time of the shooting, testified that Moore yelled as he ran up the stairs, "Call the police, Howie and them are outside shooting." On cross-examination, however, this witness admitted that she had told an investigator that Moore had only shouted, "Call the police." We have not relied on this witness's testimony in reaching our conclusion.

The defendant also argues that there were other significant discrepancies in Moore's identification testimony concerning the defendant's weight and other observations made at the scene by Moore. We do not discern in the portions of Moore's testimony relied on by the defendant any significant inconsistencies.

The criticized remarks in the prosecutor's closing argument about the right of an individual to live, and that "there is no greater wrong that can be done to an individual than to deprive him of his very existence," should have been left unsaid. This was an uncalled for appeal for sympathy. The jury, however, must have recognized the remarks as a rhetorical flourish, and, in the context of the prosecutor's entire final argument, we do not view them as prejudicial.

(c) The jury instructions provide no basis for reversal.

(i) Evidence that the defendant fled the scene after the shooting, could not be found at his home when the police sought him out, and delayed surrendering to the police until twenty-one months after the murder, warranted an instruction on consciousness of guilt.

(ii) The instruction that, "as a matter of law, a gun is a dangerous weapon," was not error in the circumstances of this case.

(iii) The correct instruction on premeditation and the jury's finding of first degree murder by reason of deliberate premeditation, renders inconsequential the reference in the malice instruction to the third prong of malice. See *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995). Similarly, the reference in the malice instruction to frame of mind language was of no harmful effect. *Commonwealth* v. *Richardson*, 425 Mass. 765, 768-769 (1997).

4. We have reviewed the record as required by G. L. c. 278, § 33E, and conclude that there is no reason to order a new trial or the entry of a lesser degree of guilt.

5. The judgment of conviction on the indictment charging the defendant with the unlawful carrying of a firearm is vacated, the jury verdict is set aside, and judgment is to be entered for the defendant on that indictment. The defendant's convictions on the other indictments are affirmed.

*So ordered.*