COMMONWEALTH *vs.* INOCENCIO CARMONA.

Worcester. September 2, 1998. - October 26, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Witness,* Bias. *Evidence,* Cross-examination, Bias, Verbal completeness.
*Practice, Criminal,* Argument by prosecutor, Assistance of counsel.

The record of a criminal trial did not support the defendant's claim that the
judge improperly limited cross-examination of a Commonwealth witness.
[269-271]
At a murder trial, there was no substantial likelihood of a miscarriage of
justice arising from the admission of certain hearsay evidence that was
admissible under the doctrine of verbal completeness. [271-272]
At a murder trial, no substantial likelihood of a miscarriage of justice arose
from a prosecutor's improper remarks in closing argument, in light of the
argument as a whole, the judge's instructions to the jury, and the strong
case against the defendant. [272-273]
No substantial likelihood of a miscarriage of justice was created by alleged
ineffective assistance of counsel at a murder trial. [273-276]

INDICTMENTS found and returned in the Superior Court Depart-
ment on April 14, 1988.

The case was tried before *Herbert F. Travers, Jr.,* J., and mo-
tions for a new trial, filed on September 18, 1991, January 11,
1993, and October 11, 1995, were heard by him.

*Raymond A. O'Hara* for the defendant.

*Harry D. Quick, III,* Assistant District Attorney *(Jody B.
Schwab,* Assistant District Attorney, with him) for the Com-
monwealth.

IRELAND, J. The defendant was convicted in 1988 by a Superior
Court jury of premeditated murder in the first degree and pos-
session of a sawed-off shotgun. His appeal, which was initially
entered in this court in April, 1989, has been delayed by the
defendant's numerous changes of counsel and by his filing in
this court a motion for a new trial which was remanded to the
trial court for disposition.

The defendant raises five main issues on appeal: (1) the trial

judge improperly limited his cross-examination of the single eyewitness to the murder by preventing inquiry into criminal charges pending against him; (2) the judge improperly admitted in evidence a statement the defendant allegedly made to police in Puerto Rico at the time he turned himself in; (3) the prosecutor made improper and prejudicial remarks to the jury in his closing argument, including statements that several witnesses were "unavailable" at trial due to their fear of the defendant; (4) the judge improperly denied the defendant's motion for a new trial based on ineffective assistance of counsel and trial counsel's alleged conflict of interest. Finally, the defendant requests relief under G. L. c. 278, § 33E, asserting that his trial counsel performed so inadequately as to call for a new trial or a reduction of the degree of guilt. For the reasons set forth below, we affirm the convictions and the denial of the new trial motion and decline to exercise our power under G. L. c. 278, § 33E.

We recite the facts briefly. At approximately 3 P.M. on July 19, 1987, Nino Etienne was killed by a shotgun blast to the chest. The murder occurred in a rooming house in Worcester. During the day of the murder there had been several arguments within the building, at least one involving the defendant and the victim. Some of these arguments were said to have been over drugs and "turf."

There was one known eyewitness to the murder, James Reid, the victim's roommate at the time. Reid testified that he saw the defendant approach the victim with a twelve-gauge shotgun, strike the victim with the weapon, and then fire the fatal shot. Another tenant of the building, Cleveland Griffin, Jr., had been with Reid and the victim immediately prior to the murder. Griffin had returned to his room when he heard a shot. On leaving his room he saw the victim lying on the floor and the defendant walking downstairs, away from the murder scene, carrying a shotgun. Immediately after the killing, Reid left the building and telephoned the police. Officer Robert C. Gaunt of the Worcester police department arrived at the scene soon afterward, and Reid identified "Chancey," the name by which Reid knew the defendant, as the assailant. In September, 1987, the defendant turned himself in to police in Puerto Rico.

1. *Cross-examination of Reid.* The defendant's first assertion, that reversal is required because the judge refused to allow him to cross-examine Reid regarding bias or motive to lie, is without merit. The record indicates that Reid was brought to Mas-

sachusetts from a North Carolina prison to testify. There were open charges against Reid in Massachusetts at the time of his testimony. The record does not disclose when he was first charged with these offenses. Reid was arraigned on August 17, 1987, roughly one month after the murder, for breaking and entering in the nighttime with the intent to commit a felony and knowing possession of burglarious tools. He was arraigned on August 28, 1987, for knowingly receiving stolen property, use without authority, and attaching wrong motor vehicle registration plates. He was defaulted on these charges on November 17, 1987. The defendant was convicted in September, 1988, and the charges against Reid were resolved in May, 1993.

It is clear that defendants are "entitled as [a] right to question . . . witness[es] about . . . pending criminal charges in order to show [their] motive in cooperating with the prosecution." *Commonwealth* v. *Connor*, 392 Mass. 838, 841 (1984). Even if no promise has been made, it is enough "that a prosecution witness is hoping for favorable treatment on a pending criminal charge . . . to justify inquiry concerning bias." *Commonwealth* v. *Henson*, 394 Mass. 584, 587 (1985).

However, a review of the record reveals that trial counsel asked only two questions regarding pending criminal charges against Reid, each of which was subject to an objection. The judge's comments in sustaining the objections show that he was opposed to the form of the questions, not their substance.[1] Instead of continuing his inquiry of potential bias or motive to lie, at this juncture defense counsel dropped the matter and

---

[1]TRIAL COUNSEL: "Sir, is that the case that you are also pending disposition here in Worcester County?"

THE PROSECUTOR: "I object."

THE JUDGE: "I think that the cart is before the horse. The objection is sustained . . . ."

TRIAL COUNSEL: "[W]hat was that arrest for?"

THE JUDGE: "No, I don't want counsel to go into some matter that may be irrelevant, unless it is demonstrated it [has] something to do with this case."

TRIAL COUNSEL: "May I be heard?"

THE JUDGE: "Bias, prejudice, motivation that sort of things, comes first."

moved on. The issue of pending charges against Reid was revisited later in the trial. Under direct examination by the Commonwealth, Detective John McKiernan stated that no promises had been made to Reid regarding any outstanding criminal matters in Massachusetts.

Even if, as the defendant claims, the judge improperly limited his cross-examination, a new trial is not automatically called for. See *Commonwealth* v. *Hamilton*, 426 Mass. 67, 73-74 (1997). Where "[t]here clearly exists in the record sufficient consistency between [the witness's] pretrial identification of the defendant and his testimony at trial . . . [an] otherwise unsatisfactory handling of the impeachment issue does not require a new trial." *Id.* at 74. Reid's initial identification of the defendant as the perpetrator of the crime was consistent with his testimony at trial in which he again identified the defendant as the assailant. Immediately after the shooting Reid ran to a nursing home across the street and telephoned the police. When the police arrived on the scene Reid identified the defendant as the assailant. Because the judge did not improperly limit the cross-examination of Reid and because of the consistency in Reid's statements, we find no error.

2. *The teletype from Puerto Rico.* The defendant argues that reversal is required because a statement he allegedly made to a police officer in Puerto Rico is hearsay and should not have been admitted at trial. Detective McKiernan stated, on cross-examination by the defendant, that the Worcester police received a teletype from authorities in Puerto Rico informing them that the defendant had turned himself in. On redirect McKiernan testified without objection that the teletype further indicated that the defendant was surrendering because he believed a friend had been charged with the murder.

The defendant's failure to object limits our analysis. "Hearsay, once admitted, may be weighed with the other evidence, and given any evidentiary value which it may possess." *Commonwealth* v. *Keevan*, 400 Mass. 557, 562 (1987), quoting *Mahoney* v. *Harley Private Hosp., Inc.*, 279 Mass. 96, 100 (1932). We now examine the issue to determine whether introduction of the statement created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 388 (1997). We find that it did not.[2]

The defendant's failure to object was an omission without

---

[2]The teletype issue was not raised in the defendant's new trial motions, and was not considered by the judge in deciding the motions. If the judge had

consequence because the doctrine of verbal completeness would have overcome his objection had one been made. See *Commonwealth* v. *Watson*, 377 Mass. 814, 825-831 (1979). When a party introduces a portion of a statement or writing in evidence the doctrine of verbal completeness allows admission of other relevant portions of the same statement or writing which serve to "clarify the context" of the admitted portion. *Commonwealth* v. *Robles*, 423 Mass. 62, 69 (1996). The rule prevents a party from presenting a fragmented and misleading version of events to the finder of fact. "The rule of completeness permits the opponent to put before the trier of fact the context of the fragmentary statement admitted . . . or explanations made at the same time." P.J. Liacos, Massachusetts Evidence § 3.12, at 105 (6th ed. 1994).

Under the rule of completeness, once the defendant presented the portion of the teletype showing that he had turned himself in he opened the door for admission of the portion explaining why he had done so. Admission of the statement explaining why the defendant turned himself in ensured that the jury had a complete and accurate understanding of his actions. Consequently, the admission of the defendant's statement did not create a substantial likelihood of a miscarriage of justice.

3. *The prosecutor's closing.* The defendant also challenges as improper statements made by the prosecutor to the jury in his closing argument.[3] During oral argument the Commonwealth essentially admitted that the prosecutor's statements would have

"fully considered" the issue, then it would be "open for our consideration as if it had been fully preserved at trial for appellate review." *Commonwealth* v. *Hallet*, 427 Mass. 552, 554 (1998).

[3]The defendant claims that the prosecutor made improper statements about another tenant of the building, Daniel McMillan. McMillan was present in the building on the day of the shooting. McMillan did not witness the shooting but had heard and seen arguments around the building earlier in the day relating to the control of drug turf. McMillan was in his room at the time of the shooting and heard the shot. At trial he testified that he did not recognize the defendant as a resident of the building where the murder occurred. Regarding McMillan's inability to identify the defendant, the prosecutor stated, "He didn't want to see him, I don't blame him." The Commonwealth went on to comment on the absence of other witnesses. "That is why [one witness] is not around, and that is why [another witness] took off." The defendant argues that these statements improperly implied that McMillan and other witnesses were in fear of the defendant.

The defendant also challenges as improper portions of the Commonwealth's closing remarks in which the prosecutor commented on the criminal justice

been better left unsaid. However, as the defendant correctly concedes, trial counsel's failure to object to the statements limits our inquiry to whether they created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993), and cases cited.[4] In making this analysis we must view the prosecutor's remarks "considering the argument as a whole, the judge's instructions to the jury, and the evidence produced at trial." *Id.* at 451-452. While it was improper for the Commonwealth to imply that witnesses were in fear of the defendant, "we cannot say that in light of the entire argument, the evidence at trial, and the instructions to the jury that the statements created a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995). The statements now challenged constituted a minor portion of the prosecutor's closing remarks. The Commonwealth did not explicitly state that any witnesses were in "fear" of the defendant, and any claimed reference to "fear" in the closing remarks was, at the most, obscure, implied, and indirect. In addition, the judge instructed the jury that the lawyer's words "are not evidence." Moreover, the Commonwealth produced a strong case which included the testimony of an eyewitness who identified the defendant as the assailant, and another witness who testified that he saw the defendant walking from the scene of the murder carrying a shotgun. In light of these factors, we conclude that the prosecutor's remarks did not create a substantial likelihood of a miscarriage of justice.

4. *Denial of the motion for a new trial.* The defendant also argues that the judge abused his discretion by denying a motion for a new trial based on allegations of ineffective assistance of counsel. Specifically, the defendant alleges that trial counsel erred in (1) failing to secure information relating to the criminal records of the Commonwealth's witnesses, and failing to use such records to impeach their credibility; (2) failing to pursue whether the Commonwealth's principal witness, Reid, had been

process and witness identification of the defendant: "They don't just lightly charge anybody with murder, I'd suggest to you. Nor would anybody I suggest come before any jury, any court, and lightly say that's the man I saw do the shooting."

[4]The defendant did not raise the prosecutor's closing in his new trial motions, nor was the closing considered by the judge in deciding on the motions. Consequently, the issue has not been "resurrected." See *Commonwealth* v. *Hallet, supra.*

given any promises, rewards, or inducements; (3) failing to object to introduction of the defendant's alleged statement to police in Puerto Rico contained in the teletype, and allowing the statement of a witness who was unavailable to testify at trial to be read in evidence; (4) failing to object to the prosecutor's closing statement or to request a curative instruction; (5) failing to maintain an attorney-client relationship free of conflicts of interest.[5]

Because the defendant was convicted of murder in the first degree, we review these allegations under the substantial likelihood of a miscarriage of justice standard. *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992). Such a review is "more favorable to a defendant than is the constitutional standard for determining the ineffectiveness of counsel. . . . In reviewing each claim of the ineffectiveness of trial counsel, therefore, we shall consider whether there was an error in the course of the trial (by defense counsel, the prosecutor, or the judge) and, if there was, whether that error was likely to have influenced the jury's conclusion." *Id.* at 682. On appeal the defendant asserts that his new trial motions were based on the five omissions presented above. A review of the defendant's three new trial motions discloses that he did not raise all of the issues he claims to have. Of the grounds the defendant purports to have raised, he only raised the failure to secure, and then use for impeachment purposes, the criminal records of the Commonwealth's witnesses, and trial counsel's allowing the statement of a witness who was unavailable at trial to be read in evidence. However, we apply the G. L. c. 278, § 33E, standard whether or not the specific grounds now alleged to constitute ineffectiveness were raised in the defendant's new trial motions.

a. *Failure to impeach witnesses.* The defendant claims that his trial counsel failed to secure information relating to the criminal records of the Commonwealth's witnesses. He asserts that had this information been secured it could have been used to impeach the credibility of these witnesses. The judge determined that, because it was well known to all the participants

---

[5]We note that the defendant characterizes this as a conflict of interest for the first time here on appeal. In his 1995 motion he explicitly states that trial counsel suffered from a lack of interest, not a conflict of interest. However, the judge addressed both the allegations of conflict of interest and lack of interest.

at trial that both the defendant and the witnesses had prior criminal records, there was no need to secure this information by motion. The judge further determined that the criminal records in question would have been of little significance in attacking the credibility of the witnesses because the defendant and the witnesses all had criminal records. The judge concluded that it was a tactical decision not to pursue this avenue of attack on the Commonwealth's witnesses.[6] The motion judge was also the trial judge; his conclusion on the impeachment value of the criminal records of the Commonwealth's witnesses was based on firsthand observations at the trial. In such a case, we give deference to the conclusions of the judge. *Commonwealth* v. *Figueroa*, 422 Mass. 72, 77 (1996), citing *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 32-33 (1923). We agree with the judge that, in this case, the impeachment value of the criminal records would have been minimal, and consequently find no error.

b. *Failure to examine Reid for bias.* The defendant claims that trial counsel failed to pursue, both in pretrial preparation and at trial, whether Reid had been given any promises, rewards, or inducements by the Commonwealth in exchange for his testimony. To the extent that he claims counsel did not pursue the matter at trial, the defendant's earlier argument, that counsel's attempt to examine Reid for bias was improperly cut off by the judge, directly contradicts his argument. As we discussed above, Reid's identification of the defendant as the killer was consistent from the time he first made the identification, shortly after the murder, up through his trial testimony. Because of the consistency, we find that the failure to pursue impeachment of Reid more aggressively did not create a substantial likelihood of a miscarriage of justice.

c. *Failure to object to hearsay.* The defendant further argued, in his motion for a new trial, that trial counsel was ineffective because he allowed, without objection, the admission of inadmissible hearsay. Specifically, the defendant objects to the reading into evidence of the statement of a witness who was

---

[6]The judge stated: "It was because [defense counsel] (and all other participants in the trial) knew that the defendant and the principle [*sic*] government witnesses were all engaged in drug trafficking and had previous records that the usage of such material to attack credibility was of little significance at the trial."

unavailable to testify at trial.[7] We agree with the judge that the decision to agree to admit the statement was a reasoned, tactical decision by trial counsel. The admission of this statement did not create a substantial likelihood of a miscarriage of justice.

The defendant also argues that it was ineffective assistance of counsel not to have objected to the admission of the teletype from Puerto Rico. As discussed above, there was a valid evidentiary basis for the admission of this statement and, consequently, its admission cannot be said to have created a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Wright,* 411 Mass. 678, 681-682 (1992).

d. *Failure to avoid conflict of interest.* It is further alleged by the defendant that the attorney-client relationship was poisoned when defense counsel requested that the defendant solicit new clients for him. The judge was in a position to observe the performance of trial counsel. He determined that any allegation of a conflict of interest, or a lack of interest, constituted a contrivance.[8] We give deference to these findings. See *Figueroa, supra* at 77.

e. *Failure to object to the Commonwealth's closing.* The defendant argues that counsel was ineffective in failing to object to improper statements made by the Commonwealth during closing argument. For the reasons discussed above, we conclude that while the prosecutor's remarks were highly improper, the remarks did not create a substantial likelihood of a miscarriage of justice.

5. *General Laws c. 278, § 33E.*

Finally, the defendant requests a reduction in, or vacation of, the murder verdict under G. L. c. 278, § 33E, due to the performance of defense counsel at trial. The law and the

[7]The statement in question was from Keith Williamson. In the statement Williamson identified Reid as his cousin. Reid had testified that he was not related to Williamson. We agree with the judge that allowing the statement in evidence provided both a benefit and risk to the defendant. The statement served to contradict Reid's testimony that he was not related to Williamson and provided a reasonable explanation of why Reid might lie and falsely identify the defendant. However, the statement also served to inculpate the defendant by tying him to the murder weapon.

[8]The judge wrote: "I find that the allegations by the defendant of [trial counsel's] conflict of interest or lack of interest in his case were without any foundation in fact and are wholly contrived. I conclude that they have their origin in the defendant learning of the counsel's improper activities in an unrelated case which led to his disbarment."

evidence support the outcome below and therefore such relief is denied.

*Judgments affirmed.*

*Order denying motions for a new trial affirmed.*