The defendant appeals from his convictions of assault and battery and assault and battery by means of a dangerous weapon (ABDW), a knife. The defendant's principal contention is that the trial judge erred in not granting a continuance so that the defendant could evaluate the Commonwealth's evidence of a deoxyribonucleic acid (DNA) match from the knife, which evidence was not produced until six days before trial. We affirm the conviction, because the defendant has not shown prejudice from the late disclosure.
Background. On the morning of December 9, 2015, the victim was walking down the street in New Bedford when he was attacked with a knife, suffering severe stab wounds to his abdomen and hands. He was also bitten on the forehead. The victim did not identify the assailant to police at the scene, but approximately one month after the attack he did so, including identifying the defendant in a photo array. The victim knew the defendant, who had lived in the victim's home, at least briefly, shortly before the attack occurred. An eyewitness to the attack, however, was unable to identify the defendant as the assailant[2] and informed police that the attacker was bald -- a description not fitting the defendant.
Detectives recovered a hammer, a hat, and a knife handle (without the blade) from the scene. They also retrieved time-stamped video surveillance from a residence near where the attack occurred, which showed the defendant leaving a nearby apartment before the crime, and returning soon after.
The defendant was arrested in January, 2016, and indicted the following month on one count of assault and battery and two counts of ABDW. The defendant moved to dismiss the indictment on the ground that the videotape surveillance evidence was exculpatory, and was wrongly withheld from the grand jury. That motion was denied after a hearing.
Trial was scheduled to begin on March 7, 2017. On February 1, 2017, the Commonwealth for the first time sought a DNA sample from the defendant, to be compared to DNA from the knife handle and hammer recovered from the scene.[3] The Commonwealth explained that the final DNA comparison results should be ready by approximately February 27, just eight days before trial. At this February hearing the defendant did not object to the Commonwealth's request, nor seek a continuance of trial. Rather, counsel indicated that he did not want trial delayed, as the defendant was in custody. The judge allowed the motion to compel a DNA sample and indicated that the Commonwealth could "try" to get the testing completed before trial. The judge stated that he would not move the trial date if the Commonwealth could not obtain the evidence in time. The judge also advised defense counsel to line up a defense expert in case the Commonwealth had DNA evidence to present, and authorized funds for such an expert.
On March 1, six days before trial, the Commonwealth advised defense counsel that the DNA on the knife handle matched the defendant's DNA. On March 6 the defendant moved to exclude the DNA match, arguing that he was unable to secure a defense expert who could properly analyze the DNA evidence in the short time remaining before trial.
The next day, the first day of trial, the judge denied the motion to exclude the DNA evidence, noting "the absence of evidence of particular prejudice, specific prejudice." Also on the first day, the defendant moved to conduct his own DNA discovery. Included with his motion was an affidavit from a DNA expert who stated that he would need at least one month after receiving the discovery to analyze it and to prepare for trial, which would mean a lengthy continuance.[4] The trial judge denied the defendant's motion for additional DNA discovery, characterizing it as a "fishing expedition." Instead, the judge stated that the defendant could review the Commonwealth's expert's material and conduct a voir dire of the expert.
After a jury trial, in which the DNA evidence was presented, the defendant was found guilty of one count of assault and battery and one of count of ABDW. He was sentenced to six to ten years in State prison.
Discussion. The defendant's principal contention on appeal is that the trial judge abused his discretion when he refused a continuance so that defense counsel could prepare a response to the DNA evidence. The defendant does not contend that exclusion of the evidence was mandated, but only that a continuance was required. Even if we were to agree that under the circumstances a continuance would have been appropriate, we nevertheless affirm, as the defendant has shown no prejudice.
While it was within the trial judge's discretion to grant the Commonwealth's late request for the defendant's DNA sample, such action necessarily begs the question of what steps should be taken to mitigate the effect of any ensuing late disclosure. See Mass. R. Crim. P. 14(a),(c), as amended, 444 Mass. 1501 (2005) (Commonwealth must disclose to defense, by time of pretrial conference, any reports of scientific tests and any intended expert opinion evidence); Commonwealth v. Giontzis, 47 Mass. App. Ct. 450, 459 (1999) (discussing possible sanctions for failure to comply with rule 14 discovery). Here the DNA evidence was important, because in the absence of the DNA evidence the defendant could have mounted a credible identification defense: while the victim knew the defendant, he did not identify him immediately and the description from another eyewitness did not match the defendant. Thus, the late evidence of a DNA match changed the nature of the Commonwealth's case and necessarily impacted the defense strategy.
Under the circumstances the better course may well have been to grant the continuance. DNA evidence can be quite complex, and an expert is generally needed to evaluate the many components that go into the determination of a DNA match. Here the proposed defense expert indicated that more than six days would be needed to properly perform such an evaluation -- a contention the judge seemed to accept, and which in any event seems reasonable. Moreover, we cannot agree with the judge's characterization of this exercise as a "fishing expedition." As noted, it was the Commonwealth's obligation to timely provide this important scientific and opinion evidence in advance of trial, for the very purpose that it could be properly evaluated by the defense. It is not a fishing expedition to subject the Commonwealth's scientific evidence to the adversary process.[5]
Nevertheless, it does not follow that a retrial is required here. In Commonwealth v. Hamilton, 426 Mass. 67 (1997), the Supreme Judicial Court addressed a similar issue, regarding the proper remedy for the late disclosure of fingerprint evidence. The court stated:
"As the defendant correctly recognizes, the judge possessed considerable discretion in dealing with the problem created by the prosecution's late disclosure of the ... evidence. When the ground for a continuance or exclusion of evidence involves late disclosure by the prosecution, without any showing of bad faith on its part (as is the case here), a defendant is required to show material prejudice from the disclosure before a new trial can be considered" (emphasis supplied).
Id. at 70.
The court went on to hold that no retrial was required, where the trial judge had granted a two-day continuance and taken other steps at trial to mitigate the impact of the late disclosure. See ids="369446" index="4" url="https://cite.case.law/mass/426/67/">id.
As in Hamilton, there is no assertion of prosecutorial bad faith here, and the defendant has failed to show material prejudice from the late disclosure. The defendant did have access to a DNA expert to prepare cross-examination of the Commonwealth's DNA witnesses. The defendant has not suggested, either in the trial court or in his brief to this court, that there was a significant factual point about the DNA that he did not make at trial, and that would have been unearthed if given more time. The defendant did not seek additional time once trial began, either for cross-examination or to submit expert rebuttal. Nor has the defendant filed any posttrial papers questioning the quality of the Commonwealth's DNA evidence; for example, the defendant has not sought to submit contradictory expert testimony through a new trial motion under Mass. R. Crim. P. 30, as appearing in 435 Mass. 1501 (2001). In short, no material prejudice has been shown here, and thus a new trial is not required. See Commonwealth v. Bresilla, 470 Mass. 422, 431 (2015) (defendant was not materially prejudiced by delayed disclosure of pretrial clothing identifications); Commonwealth v. Stote, 433 Mass. 19, 22-23 (2000) (defendant did not show how trial tactics would have changed in light of scientific report disclosed five days before trial).
The defendant also contends that the grand jury indictment was fatally tainted because the grand jury was not shown certain time-stamped video surveillance evidence taken from a home roughly 100 yards from where the attack occurred. While it is possible for an indictment to be found defective where the withholding of highly material evidence distorts the grand jury process, Commonwealth v. O'Dell, 392 Mass. 445, 447 (1984), in this case we agree with the motion judge that the video surveillance was not such evidence. The video evidence showed that the defendant left the premises at 9:09 A.M. , and arrived back at 9:53 A.M. , apparently breathing heavily.[6] The 911 call was made at 9:53 A.M. Rather than being exculpatory, the evidence was quite arguably inculpatory, as it showed the defendant in a location proximate to the attack around the time the attack happened, and it also showed that the defendant had left the building for over forty minutes at around that time. The indictment was not faulty because the video evidence was not presented to the grand jury. See Commonwealth v. Pina, 406 Mass. 540, 549 (1990).
Judgments affirmed.

The eyewitness viewed a photo array prior to trial that included the defendant and did not select anyone as the assailant.

The prosecutor had no explanation as to why the DNA testing was not done earlier. He explained that the case had been assigned to him just the month before.

The motion itself did not explicitly ask for a continuance, but the expert's affidavit twice stated that a continuance was required, and the request for a continuance was discussed with the judge before he denied the motion.

We recognize that defense counsel did not object to the Commonwealth's proposed late DNA comparison when it was first raised in February. The lack of an objection may well have been tactical -- an objection might have led to a continuance, and the defendant may have been hoping that the Commonwealth could not finish its testing by the March, 2017, trial date. Nevertheless, we do not think the defendant's failure to object in February somehow waived his ability to subsequently press for a continuance. The fact remains that the Commonwealth did not disclose its evidence, or even that it had a match, until six days before trial. Once he had received the evidence, the defendant objected.

The actual timestamps on the video were incorrect, and were adjusted based upon testimony. The defendant has not contested the adjustments, however.