NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-754

COMMONWEALTH

vs.

JENNIFER MENDEZ.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A District court jury convicted the defendant of assault and battery on a police officer (ABPO)[2] and resisting arrest.[3] The defendant appeals, claiming the judge impermissibly allowed the Commonwealth's motion to amend the complaint by changing the name of the victim of the ABPO.  In addition, the defendant claims the Commonwealth violated her right to confront witnesses by failing to produce exculpatory evidence.  We affirm.

---

[1] As is our custom, we use the defendant's name as it appears on the complaint.

[2] In violation of G. L. c. 265, § 13D.

[3] In violation of G. L. c. 268, § 32B.

Background.  We summarize the evidence presented to the jury.  On the evening of September 5, 2020, State police Troopers Gilbert Gonzalez and Brian Gervais stopped the defendant's motor vehicle because it was missing a front license plate.  There were three individuals in the vehicle:  the defendant, sitting in the driver's seat, Cesar Diya, sitting in the front passenger seat, and Miguel Torres, sitting in the back passenger-side seat.  Trooper Gonzalez approached the driver's side door and Trooper Gervais approached the passenger's side of the vehicle.  The vehicle's front windows were down and as Trooper Gervais approached, he heard Diya scream for everyone in the car to be quiet and not say anything to the police.  When Trooper Gonzalez approached the defendant and asked for her driver's license, he noticed her eyes were bloodshot and he smelled alcohol.  As he leaned in closer to see if the alcohol odor was coming directly from her, Diya became upset and said, "Why are you smelling my girl, you . . . pig?"  After quickly consulting with Trooper Gervais, Trooper Gonzalez ordered Diya to exit the vehicle.  At first, Diya did not comply and pulled out a folded knife before the troopers were able to get him out of the vehicle and place him in handcuffs.  Trooper Gonzalez then brought Diya towards the back of the vehicle and Trooper Gervais did the same with Torres.

2

Trooper Gervais next approached the driver's door as the defendant was sitting in the driver's seat. He smelled alcohol emanating from her and she appeared irate. Trooper Gervais ordered the defendant to step out of the vehicle. She did not comply. Trooper Gervais opened the vehicle's door to prevent her from fleeing. After asking the defendant to exit the vehicle several times, Trooper Gervais informed her that she was under arrest and warned her he was going to physically remove her from the vehicle if she did not comply with his commands.

As Trooper Gervais attempted to remove the defendant from the driver's seat, she started thrashing her body back and forth and pushed Gervais away from the vehicle.[4] Trooper Gervais then used his taser on the defendant on the upper, center part of her back. Trooper Gervais and another officer who had arrived at the scene, Fitchburg police Officer Tyler Cote, removed the defendant from the vehicle, handcuffed her, and assisted her back to her feet.[5] After the defendant was handcuffed, two officers led her to a cruiser and placed her in the back seat.

Discussion. a. Complaint amendment. On April 6, 2021, approximately seventeen months before the trial commenced, the

---

[4] This altercation formed the basis for ABPO charge against the defendant.

[5] The defendant disputed this account, claiming Trooper Gervais slammed her to the ground, put his knee on her back, and tased her.

3

Commonwealth moved to amend the ABPO count of the complaint by replacing the name of the alleged victim of the ABPO from Trooper Gonzalez to Trooper Gervais. When the judge asked defense counsel if he wanted to be heard on this motion, counsel responded, "No objection." The judge allowed the motion to amend.

At the start of trial the clerk, while swearing in the empaneled jurors, mistakenly read the original complaint which named Trooper Gonzalez as the victim of the ABPO. The prosecutor immediately notified the judge of the error, and the judge then instructed the clerk to read the amended portion of the complaint to the jury before the judge's preliminary instructions. During the trial, the jury only heard evidence and received instructions from the judge on assault and battery against Trooper Gervais.

The defendant now argues for the first time on appeal that by replacing Trooper Gonzalez with Trooper Gervais as the named victim of the ABPO, the judge impermissibly amended the complaint. She contends that amending the victim's name on the ABPO count of the complaint was an amendment of substance that violated her Sixth and Fourteenth Amendment rights under the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. We disagree.

General Law c. 277, § 47A, provides, in pertinent part:

"In a criminal case, any defense or objection based upon defects in the institution of the prosecution or in the complaint or indictment, other than a failure to show jurisdiction in the court or to charge an offense, shall only be raised prior to trial and only by a motion in conformity with the requirements of the Massachusetts Rules of Criminal Procedure. <u>The failure to raise any such defense or objection by motion prior to trial shall constitute a waiver thereof</u>, but a judge or special magistrate may, for cause shown, grant relief from such waiver" (emphasis added).

Because the defendant did not raise this issue prior to trial, and it is not based on "a failure to show jurisdiction in the court or to charge an offense," <u>id</u>., it is statutorily waived.[6] See <u>Commonwealth</u> v. <u>Lamont L.</u>, 438 Mass. 842, 845 (2003); <u>Commonwealth</u> v. <u>Hrycenko</u>, 417 Mass. 309, 312 (1994). See also <u>Commonwealth</u> v. <u>Doughty</u>, 491 Mass. 788, 804 (2023).

b. <u>Failure to produce exculpatory evidence</u>. The defendant also argues that the Commonwealth denied her constitutional right to confront witnesses against her by failing to produce court-ordered discovery. Specifically, she alleges the Commonwealth improperly withheld a supplemental Fitchburg police report, a daily administrative journal (DAJ) database entry, a taser data report, and a use of force report.

---

[6] We do not review the defendant's waived argument for a substantial risk of a miscarriage of justice under <u>Commonwealth</u> v. <u>Freeman</u>, 352 Mass. 556, 564 (1967), because G. L. c. 277, § 47A, which was amended in relevant part in 1979, following <u>Freeman</u>, controls as to waiver of the claim. Moreover, the defendant has failed to show cause for relief from the statutorily mandated waiver.

"To prevail on these claims, [the defendant] must show that the undisclosed evidence existed and was exculpatory, [she] made a specific request for it, the prosecution failed to produce it, and a 'substantial basis exists for claiming prejudice from the nondisclosure'" (citations omitted). Commonwealth v. Bateman, 492 Mass. 404, 419 (2023). The defendant may demonstrate prejudice from nondisclosure by showing "there is a reasonable possibility that the nondisclosed evidence would have made a difference." Commonwealth v. Laguer, 448 Mass. 585, 594 (2007).

Regarding the Fitchburg police report, DAJ database entry, and taser data report, the defendant cannot establish a discovery violation because she did not offer evidence that any of these documents exist.[7] See Bateman, 492 Mass. at 419. See also Commonwealth v. Hudson, 446 Mass. 709, 728 (2006) (defendant failed to establish Commonwealth withheld exculpatory documents where there was no evidence that documents existed).

Concerning the use of force report, the Commonwealth does not dispute that the defendant was entitled to the report before trial, and further, that it did not provide the report to her

---

[7] Appellate defense counsel conceded at oral argument that there was no evidence of the existence of a Fitchburg police report. Concerning the taser report and DAJ database entry, in preparation for this appeal, the Commonwealth contacted a State police trooper involved with this case to inquire whether the taser report and DAJ database entry existed. The trooper reported there were no such records on file.

until after trial.[8]  However, the defendant has not demonstrated

that the Commonwealth's failure to disclose the report was

prejudicial to the defendant because the information contained

in the use of force report was cumulative of Gervais's trial

testimony.[9]  Additionally, the contents of the use of force

report had been effectively incorporated into Gervais's arrest

report which the Commonwealth provided to the defendant well in

advance of trial.[10]  Contrast Commonwealth v. Watkins, 473 Mass.

222, 232 (2015) (defendant did not demonstrate prejudice where

undisclosed evidence "would have served only as weak and

---

[8] The Commonwealth claims it was not aware of the report's
existence until Gervais testified to it at trial.  The
Commonwealth obtained the report and provided it to the
defendant in preparation of this appeal.

[9] The use of force report described the defendant's
resistance to include exhibiting body language that was "rigid,
tense, mouth clenched, clenched steering wheel."  This report
also referenced that the defendant "screamed that she refused to
exit [motor vehicle]," and actively resisted by "pull[ing] arms
away, push[ing] herself further into the [motor vehicle], . . .
pushing [Gervais]."  As compared with Gervais's incident report,
the use of force report contained no new information.
Accordingly, the defendant has not demonstrated that she was
prejudiced by the late disclosure of this report.  See
Commonwealth v. Watkins, 473 Mass. 222, 232 (2015).  See also
Commonwealth v. Hamilton, 426 Mass. 67, 70 (1997) ("without any
showing of bad faith on [the prosecution's] part . . . a
defendant is required to show material prejudice from the
nondisclosure before a new trial can be considered").

[10] The defendant does not claim Gervais's arrest report was
either withheld or produced in an untimely manner.  The
Commonwealth's certificate of discovery compliance indicates it
had provided Gervais's arrest report by September 10, 2021.

cumulative impeachment evidence"), with <u>Commonwealth</u> v. <u>Caldwell</u>, 487 Mass. 370, 377-778 (2021) (defendant prejudiced by improper nondisclosure because specific facts relating to key witness's cooperation, including hope for favorable treatment and reduction of sentence, not cumulative of police report that simply noted witness's cooperation with law enforcement).

    <u>Conclusion</u>.  For the reasons discussed above, we affirm the judgments.

<u>So ordered</u>.

By the Court (Meade, Walsh &
  Smyth, JJ.[11]),

Clerk

Entered:  February 3, 2025.

---

[11] The panelists are listed in order of seniority.

8