# COMMONWEALTH vs. SAMMY ORTIZ.

No. 98-P-1694.

Suffolk. April 3, 2001. - November 7, 2001.

Present: BECK, RAPOZA, & BERRY, JJ.

*Constitutional Law,* Admissions and confessions, Waiver of constitutional rights, Assistance of counsel. *Evidence,* Admissions and confessions, Impeachment of credibility. *Practice, Criminal,* Admissions and confessions, New trial, Assistance of counsel, Findings by judge, Failure to object, Argument by prosecutor, Instructions to jury. *Grand Jury. Witness,* Impeachment.

At a criminal trial, the judge permissibly concluded that, in light of all the circumstances, the lapse of time between Miranda warnings being administered to the defendant and the defendant's statements to police was not significant and did not negate the validity of the defendant's knowing, voluntary, and intelligent waiver of his rights. [171-172]

Where a criminal defendant did not meet the threshold burden of establishing knowing or reckless presentation of false testimony to a grand jury, the defendant failed to demonstrate that he had lost a substantial defense and, consequently, defense counsel was not ineffective in not filing a futile motion to dismiss the indictments against the defendant. [173-175]

Defense counsel was not ineffective for failing to request a continuance or mistrial in response to a prosecutor's delayed disclosure of certain police interview reports, where the decision to go forward was a strategic decision that was not manifestly unreasonable when made; nor was counsel ineffective in not seeking sanctions against the Commonwealth, where the defendant's assertion that the prosecutor acted in bad faith in withholding the reports was not supported in the record. [175-177]

In the circumstances of a criminal trial, defense counsel was not ineffective in failing to object to certain appropriate remarks in the prosecutor's opening statement [177-179], failing to impeach a witness during cross-examination with a five year old delinquency adjudication and unrelated open criminal charges [179-181], failing to object to an isolated reference in the testimony of a police officer that the witness had looked at "[a] book of mugshots" at the police station [181], and failing to object to certain references in the prosecutor's closing argument [181-182].

At a criminal trial, the judge's instruction to the jury on assault and battery with a dangerous weapon addressed the "requisite state of mind" concerning the intentional touching with the weapon and did not give rise to a substantial risk of a miscarriage of justice. [182-183]

INDICTMENTS found and returned in the Superior Court Department on September 6, 1995.

The cases were tried before *Robert W. Banks*, J., and motions for a new trial and posttrial discovery were heard by *Elizabeth B. Donovan*, J.

*Beth L. Eisenberg* for the defendant.

*Brian J.S. Cullen* for the Commonwealth.

BERRY, J. The defendant was convicted of two counts of armed assault with intent to murder (G. L. c. 265, § 18), assault and battery by means of a dangerous weapon (G. L. c. 265, § 15A), unlawful possession of a firearm (G. L. c. 269, § 10[*a*]) and of ammunition (G. L. c. 269, § 10[*h*]), and one count of threatening to commit a crime (G. L. c. 275, § 2).[1] He filed two motions for a new trial. The defendant's direct appeal has been consolidated with the appeal from the denial of his second new trial motion[2] and his posttrial discovery motion. His claims of error are that (1) the motion to suppress his statements should have been allowed because Miranda warnings were not timely; (2) his counsel was ineffective (a) in failing to seek dismissal of the indictments when a witness recanted his grand jury identification, (b) in failing to request a continuance after delayed disclosure of certain police reports, (c) in the conduct of the trial, including failing to object to various "prosecutorial excesses" in the opening and closing, and an inadequate cross-examination of a primary witness; (3) there was error in the assault and battery with a dangerous weapon instruction; and (4) the postconviction motion for discovery was wrongly denied.

---

[1]On one count of armed assault with intent to murder, the defendant was sentenced to from ten to fifteen years imprisonment. On the other armed assault count, he was sentenced to five years probation from and after; concurrent sentences were imposed on the other offenses. The guilty verdicts for unlawful possession of ammunition and one count of threatening a crime were placed on file with the defendant's consent, and are not before us. See *Commonwealth* v. *Mahar*, 430 Mass. 643, 644 n.1 (2000). A required finding of not guilty entered on a second threat count.

[2]The defendant did not prosecute his notice of appeal from denial of the first new trial motion, which was heard by the trial judge. The second motion for new trial was heard by a different judge, who made findings of her own and also incorporated the findings from the trial judge's ruling denying the first motion for new trial.

We affirm the convictions, the denial of the new trial motion, and the denial of the postconviction discovery motion.

1. *Factual background.* The trial evidence may be summarized as follows. On the afternoon of August 28, 1995, Michael Spinola and his friend Antonio Silva were riding bicycles when they encountered the defendant, Sammy Ortiz, sitting in his grey Mazda automobile. There was a history of animosity between the defendant and Spinola, arising out of gang conflicts and a shooting two years earlier, when Spinola's friend had killed the defendant's friend. The defendant got out of his car and confronted Spinola, challenging him to a fight and warning him that he and his friends were "going to catch a bad one," which meant, Spinola testified, "getting hurt or killed," and that the defendant was "not going to let it rest until somebody else goes away." Spinola retorted, "Fight or just let it go." The defendant then popped open his car trunk and pulled out a crumpled black shirt that appeared to have something rolled inside. Not being able to see what, if anything, was concealed in the shirt, but fearing the defendant had a weapon, Spinola and Silva sped away on their bikes. As the two turned a corner they heard the screeching of tires followed within seconds by the sound of gunshots. Turning around, Spinola saw the grey Mazda pass through the intersection. Spinola could not see inside the car. Immediately thereafter and close to the shooting scene, Spinola found that his four year old nephew had been shot in the leg[3] while playing on the sidewalk near Spinola's house. Spinola called the police and told the responding officers that he had been the intended victim of the shooting. He identified the defendant by name and later identified his photograph at the police station. Shell casings were found at the scene as well as bullets and a bullet hole in a car parked nearby.

A Registry of Motor Vehicles report confirmed that the defendant owned a grey Mazda registered in Stoughton. The defendant was apprehended in Stoughton hiding in the basement of his girlfriend's apartment building. Officer Gabrielle

---

[3]The four year old child sustained serious injuries requiring hospitalization and encasement in a body cast for three months. The shooting of the child was the predicate for the charge of assault and battery by means of a dangerous weapon.

placed the defendant under arrest and gave him Miranda warnings. At the Stoughton police station, Officer Bohn again stated the Miranda warnings, and the defendant signed an acknowledgment that he had received advice of his rights. After booking, Boston detectives took custody of the defendant and drove him back to Boston. During the trip, Detective Arnstein asked what had happened. The defendant replied that "he didn't shoot anybody," that there was a Hispanic male in his car in the passenger seat, whom he only knew as "Michael," who fired out of the passenger side of his car. When asked about the gun, the defendant said he could show the officers where the passenger Michael had thrown the gun. He directed the officers to a yard. No gun was found. Contrary to the defendant's description of the passenger as the shooter, a bystander described the shots as being fired from the driver's window. There was also evidence that the driver's side of the car would have been facing the victim as the car turned through the intersection. A search of the defendant's car incident to arrest revealed a black hooded sweatshirt in the trunk. A red tee shirt and black pants, seized pursuant to a warrant after the defendant's arrest, matched witnesses' descriptions of the clothing worn by the assailant at the scene.

2. *Motion to suppress: untimely Miranda warnings.* In his direct appeal, the defendant contends his statements to Detective Arnstein during the ride to Boston should have been suppressed because the previously administered Miranda warnings were merely "formulaic" and were stale because not repeated prior to his statements. In denying the motion to suppress, the trial judge found that, by the dual warnings, the defendant was completely advised of his Miranda rights, and the defendant knowingly and intelligently waived his rights in speaking with the detective. We agree.

The judge noted that the defendant signed the acknowledgment that he understood his rights, and the judge found that understanding was supported by the facts that the defendant spoke and understood English and had no physical or mental

impairment.[4] There was also testimony that the Miranda warnings were given close in time to the statements. The defendant had been twice properly advised of his Miranda rights within approximately ninety minutes of his being transported to Boston: first, at the time of his arrest, and again during the booking process. While "Miranda warnings, once given, are not to be accorded unlimited efficacy or perpetuity . . . there is no requirement that an accused be continually reminded of his rights once he has intelligently waived them" (citations omitted). *Commonwealth* v. *Mello*, 420 Mass. 375, 385-386 (1995). See *Commonwealth* v. *Cruz*, 373 Mass. 676, 687 (1977) (lapse of three and one-half hours between warnings and defendant's incriminating statements did not require fresh Miranda warnings); *Commonwealth* v. *Mello*, 420 Mass. at 386 (six hour lapse did not warrant suppression). Based on this record, we believe that "the judge permissibly concluded that, in light of all the circumstances, the lapse of time was not significant and did not negate the validity of the defendant's knowing, voluntary, and intelligent waiver." *Commonwealth* v. *Silva*, 388 Mass. 495, 502 (1983).

3. *Motion for new trial.*

a. *Standard of review.* Notwithstanding that there was no objection to certain alleged errors, the defendant claims that nonpreserved errors were "resurrected" in the ruling on the new trial motion so that the prejudicial error standard of appellate review governs. The defendant cites *Commonwealth* v. *Vinnie*, 428 Mass. 161, cert. denied, 525 U.S. 1007 (1998), to support this argument. In that case, relying on *Commonwealth* v. *Hallet*, 427 Mass. 552, 552-555 (1998), the court noted that "[a] judge may resurrect claimed errors due to the ineffective assistance of counsel by addressing them in ruling on a postver-

---

[4]The judge was informed by counsel that the voluntariness of the defendant's statements was not at issue. He nonetheless diligently made findings concerning the provision of the Miranda warnings, the waiver thereof, and the voluntariness of the statements. While appellate review brings "independent determination" to the constitutional validity of a waiver, "[t]he judge's subsidiary findings with regard to his determination that a waiver was knowing and voluntary will not be disturbed on appeal if the findings are warranted by the evidence . . . . Furthermore, a trial judge's ultimate conclusion of a voluntary waiver is entitled to deference." (Citations omitted.) *Commonwealth* v. *Silva*, 388 Mass. 495, 502 (1983).

dict motion, in which case the appropriate harmless or non-prejudicial error applies." *Commonwealth* v. *Vinnie, supra* at 163 n.2. We need not add to the analysis of the appellate principles of resurrected error set forth in *Vinnie* and *Hallet* because, even if we were to deem applicable the prejudicial error standard, reversal of the defendant's convictions is not warranted on any of the grounds he advanced on his motion for new trial. We turn now to the issues raised in the motion for new trial.

b. *The recanted grand jury identification.* In his second new trial motion, the defendant asserted that his lawyer rendered ineffective assistance in not moving to dismiss the indictments when the witness Silva recanted his grand jury identification of the defendant made some sixteen months before trial. At the grand jury, Silva testified he saw the defendant's face as he shot the gun out of the driver's side window of the Mazda. Prior to trial, the defendant obtained three letters from Silva repudiating the identification as mistaken. Defense counsel produced the letters to the prosecutor on the first day of trial. Silva had also communicated with the prosecutor prior to trial and related that his identification was mistaken. On the Saturday two days before trial, the prosecutor interviewed Silva to determine what his trial testimony would be. He asserted that his grand jury identification was mistaken. When the prosecution called Silva as a witness on the second day of trial, the judge held a voir dire, wherein Silva recanted the identification on the record, at first reiterating (as in the letters and prior out-of-court statements) that he was mistaken because his back was to the Mazda and "[t]he only thing I seen was Sammy [the defendant] or Mike and that's it." Then, upon further inquiry by the judge, Silva moved from the position of mistake to a new position of a deliberately falsified identification. He told the judge that, if called to testify at trial, he would not identify the defendant as the shooter. The judge excluded him as a trial witness.

We review to determine whether counsel's failure to file a motion to dismiss the indictments was ineffective assistance and deprived the defendant of an otherwise available substantial defense. *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). That, in turn, requires determination of whether a motion to

dismiss the indictments would have been allowed. We conclude, as did the motion judge, that such a motion would have been unavailing, and thus there was no ineffective assistance in the failure to file such a motion.

The controlling case setting forth the standards for determining whether false[5] grand jury testimony compels dismissal of an indictment is *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621-622 (1986).

> "In summary, it is not enough for dismissal of an indictment that false or deceptive evidence was presented to the grand jury. Two further elements normally must be shown. First, our cases have required a showing that false or deceptive evidence was given to the grand jury knowingly and for the purpose of obtaining an indictment . . . . [A] showing of the Commonwealth's reckless disregard of the truth leading to the presentation of false or deceptive evidence could also warrant dismissal of an indictment. Second, the defendant must show that the presentation of the false or deceptive evidence probably influenced the grand jury's determination to hand up an indictment. This requires a showing not only that the evidence was material to the question of probable cause but that, on the entire grand jury record, the false or deceptive testimony probably made a difference." (Footnote omitted.)

The defendant has not met his burden of showing that the prosecutor appearing before the grand jury knew or recklessly disregarded that Silva's identification was false. After hearing, the motion judge found that "[t]he prosecutor did not know that Silva's grand jury testimony was false." We "accept the find

---

[5] We assume for purposes of this analysis that the identification was false. However, we note, as the trial judge observed in ruling on the first new trial motion, the recantation was extremely selective. Silva continued to confirm that the defendant was in the Mazda, and did not recant his testimony concerning the events occurring before and during the drive-by shooting. Markedly, the principal differences in the recantation were limited to substituting the unknown Mike for a woman passenger (whom Silva had described to the grand jury), and his new inability to determine which one, driver or passenger, fired the gun out the Mazda window. Silva did not say in the recantation that the defendant did *not* fire the shots, rather he contended that he had not seen who the shooter was. The prosecutor contended that it was the recantation, and not the grand jury identification, that was false. See note 6, *infra*.

ings of the judge below [where] they are warranted by the evidence and will give deference to the [judge's] ultimate findings." *Commonwealth* v. *Buckley*, 410 Mass. 209, 220 (1991). Here, the record reflects that the prosecutor only learned of Silva's switch just prior to trial and then undertook to interview him to determine whether he was, in actuality, going to change his testimony. At that point, Silva claimed there was a mistaken identification, not a fabrication.[6] Indeed, the defense only produced the recantation letters on the opening day of trial. After interviewing Silva, the prosecutor remained convinced that Silva's original identification was accurate and believed it was the recantation that was the lie. See note 5, *supra*. Based on our review of the grand jury and trial records, we conclude that the defendant has not met the threshold *Mayfield* burden of establishing knowing or reckless presentation of false testimony to the grand jury. He has, therefore, failed to demonstrate that he lost a substantial defense. His counsel was not ineffective in not filing a futile motion to dismiss the indictments.[7] The *Mayfield* initial burden not having been met, we need go no further.[8]

c. *Delayed disclosure of police interview reports.* In his new

[6]The prosecutor described the interview as follows. "I went to see him and he said that he was going to say that it was a mistake. I said, 'Tony, that's not what you said before.' He said he was going to say it was a mistake." The prosecutor told the trial judge, "I didn't think he was lying before the grand jury. He says he's lying, but I don't think he's lying. . . . He told me he was mistaken, he didn't lie, that's what he told me." In the voir dire, Silva similarly began by claiming mistake: "I told her that it was a mistaken identification. . . ."

[7]The defendant also argues that the prosecutor had constitutional and ethical obligations to request dismissal of the indictments and cites *United States* v. *Basurto*, 497 F.2d 781 (9th Cir. 1974). *Basurto* is quite distinguishable. In the first place, the defendant has not established that the prosecutor knew of the falsity, unlike in *Basurto*. Secondly, in that case, the perjured testimony was recanted in toto. That is not so here. Lastly, we note that *Basurto* "has been accorded mixed reviews, even by the court which decided it," and the First Circuit has declined to endorse it. See *United States* v. *Mangual-Corchado*, 139 F.3d 34, 41 (1st Cir. 1998).

[8]Even if we were to address the second *Mayfield* element and assume, without deciding, that the recanted identification was material, "the fact that intentionally or recklessly false or deceptive evidence concerns a material fact does not alone warrant dismissal of an indictment. The defendant must also show probable prejudice in the grand jury proceedings." *Commonwealth* v. *Mayfield*, 398 Mass. at 622. In this case, there was no probable prejudice in the grand jury because, as the motion judge found, assessed in totality, the

trial motion, the defendant attacked the prosecutor's delayed disclosure of certain police reports, contending that the late disclosure violated the Commonwealth's discovery obligations and that defense counsel was ineffective for failing to request a continuance, a mistrial, or other sanctions against the Commonwealth under Mass.R.Crim.P. 14(c), 378 Mass. 880 (1979). The facts underlying the defendant's claims are as follows. On the first day of trial, the prosecutor informed defense counsel of the possible existence of additional police reports. On the second trial day, the prosecutor produced additional reports, including two reports of interviews on the day of the shooting with Eddricka Miller, a neighbor who had observed the shooting. Miller was located and brought to court that day and was interviewed by the prosecutor and defense counsel. He was called as a prosecution witness.

The motion judge found no ineffective assistance of counsel. The judge noted that, before trial resumed, defense counsel had interviewed the witness Miller and Officer Chin, the author of one of the reports. See *Commonwealth* v. *Fossa*, 40 Mass. App. Ct. 563, 569 (1996) (opportunity afforded defense counsel to interview eyewitnesses referenced in late disclosed reports may "sufficiently render a clear Commonwealth discovery violation nonprejudicial"). After rejecting the trial judge's offer to recess the trial, defense counsel conducted a targeted cross-examination of the witness, eliciting that Miller could not identify the shooter and that he had limited ability to see the fast moving car accurately or perceive whether it was the passenger or the driver who fired the shots. The decision to go forward was a strategic decision that was not "manifestly unreasonable" when made,[9]

other grand jury testimony — independent of, and apart from, the Silva identification — presented incriminating evidence to the grand jury and provided an abundance of probable cause for the indictments. Contrast *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The full compilation of grand jury evidence included the testimony of seven witnesses and highly inculpatory evidence, including but not limited to the defendant's admission placing him in the car at the time of the shooting, real evidence seized pursuant to warrant, and corroborative testimony from the witnesses.

[9]In measuring the reasonableness of counsel's action, we consider whether the late disclosure gave rise to material prejudice. "When the ground for a motion for a new trial 'involves late disclosure by the prosecution, without

the standard by which we review a challenge to the tactical decisions of counsel.[10] *Commonwealth* v. *White*, 409 Mass. 266, 273 (1991).

We turn next to the defendant's claim that sanctions against the Commonwealth were in order, and his counsel was remiss in not seeking them. The defendant contends that the prosecutor acted in bad faith because she knew of the reports long before trial and deliberately withheld them. That assertion is not supported in the record,[11] and, thus, we reject the claim that defense counsel was ineffective in not seeking sanctions against the prosecution because of bad faith or wilful nondisclosure of the reports.[12]

---

any showing of bad faith on its part . . . a defendant is required to show material prejudice from the [delay in] disclosure before a new trial can be considered.' " *Commonwealth* v. *Stote*, 433 Mass. 19, 22 (2000), quoting from *Commonwealth* v. *Hamilton*, 426 Mass. 67, 70 (1997). We agree with the trial judge, who, having considered the trial evidence and the defense theory of the case, concluded that he could not "conceive of any defense, other than the one pursued, that the defendant could have employed had he known earlier" of the Miller interview reports and, accordingly, earlier disclosure of the reports would not have created a reasonable doubt that would not otherwise have existed.

[10]The defendant theorizes that he may have lost a substantial defense because counsel's failure to continue the case deprived him of further investigation that might have shown that the witness Miller was mistaken or untruthful, or that there was inadequate police investigation of the information provided by the witness. Both assertions are far too speculative in terms of yielding material evidence helpful to the defense. See *Commonwealth* v. *Carter*, 429 Mass. 266, 270 (1999).

[11]As in *Commonwealth* v. *St. Germain*, 381 Mass. 256, 261-262 n.8 (1980), the Commonwealth does not argue that the fact that the prosecutor herself was unaware of the police reports excuses the Commonwealth's delay in disclosure. Nor do we condone the Commonwealth's failure to fulfill its discovery obligations. See *id.* However, the record, including the postargument submissions, does not support the defendant's contention that the prosecutor knew of the reports because she was at the crime scene on the day of the shooting, when the interviews underlying the reports were conducted, but deliberately withheld them. In fact, the prosecutor represented to the trial judge that she only learned there might be additional police reports on the first day of trial and immediately informed defense counsel. The next day, she received the subject reports from a detective and produced them to the defense. That the prosecutor had no earlier knowledge of the reports or the witness is further confirmed by the fact that Miller was first sought and brought to the courthouse on the second trial day.

[12]Given our holdings concerning the late disclosure of the police reports, there was no abuse of discretion in the denial of the defendant's postconvic-

d. *Ineffective assistance claims involving conduct of the trial.* The defendant asserts that trial counsel was ineffective in failing to object to "prosecutorial excesses"[13] in the opening and closing. He also recites a litany of strategic trial decisions for which he criticizes trial counsel. Dividing the performance of trial counsel piece by piece to form a collage of alleged ineffectiveness is generally not persuasive, as we assess the performance of counsel as a whole. *Commonwealth* v. *Adams,* 374 Mass. 722, 728 (1978). Here, both the trial judge and the motion judge found that trial counsel was an experienced trial attorney and "veteran of the criminal defense bar," who ably defended, "advocated well at side bar," lodged many timely objections, and conducted organized and directed cross-examinations. Having reviewed the record as a whole, we agree that counsel's conduct was not ineffective. We address the main points raised.

(i) *The prosecutor's opening statement.* The defendant complains his counsel should have objected to two remarks in the prosecutor's opening: (1) a reference that the defendant told Spinola in the original exchange, "I'm not going to rest until I kill one of you"; and (2) a reference that "Spinola will tell you that he saw [the defendant] take out something wrapped in a black material at which time he started to suspect that the defendant . . . had a gun in there." The first reference was not objectionable and was consistent with the trial evidence, including Spinola's testimony concerning the defendant's threat to

tion discovery motion. See *Commonwealth* v. *Stewart,* 383 Mass. 253, 256-257 (1981). The defendant has failed to "establish 'a prima facie case for relief.' " *Commonwealth* v. *Tague,* 434 Mass. 510, 519 (2001), quoting from Mass.R.Crim.P. 30(c)(4), 378 Mass. 900 (1979).

[13]In his compilation of prosecutorial excesses, the defendant also includes the grand jury issue and the late disclosure (previously addressed). In a footnote in his reply brief, the defendant added to this list a suggestion of witness intimidation by a detective who accompanied the prosecutor during the pretrial interview of Silva. He contends that the detective overreached and told Silva that he could be subject to prosecution and jail if he did not testify truthfully, presumably including his prior identification of the defendant. Silva did not testify at trial. A footnote in a reply brief of one sentence and a citation does not satisfy the appellate standards for presenting an appeal as required by Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). *Commonwealth* v. *Lydon,* 413 Mass. 309, 317-318 (1992) ("[A]rguments relegated to a footnote do not rise to the level of appellate argument"). Accordingly, this issue has been waived.

"get[] one of us" and that he (Spinola) would "catch a bad one," which Spinola testified meant "getting hurt or killed" by "[e]ither [a] bullet or knife." As to the second reference, that the evidence that Spinola believed a gun was hidden in the black shirt was later excluded does not demonstrate that the prosecutor lacked a good faith basis for the opening reference. She did, in fact, seek to elicit that evidence. See *Commonwealth* v. *Burke*, 414 Mass. 252, 262 (1993). Given that the two references were not inappropriate, it was not ineffective assistance not to object to either of these remarks.

(ii) *Cross-examination of Spinola.* The defendant criticizes the manner of trial counsel's cross-examination of Spinola as ineffective. The claim is not well taken. The cross-examination of Spinola was directed to the main theory of the defense — that the mysterious passenger, Michael, was the shooter. Bias on Spinola's part was further developed by highlighting that it was his young nephew who had been shot, Spinola considered himself the real target of the shooting, and there was a long-standing history of hate between the defendant and Spinola.

In particular, the defendant contends that his counsel should have impeached Spinola with a five year old delinquency adjudication. However, although "[t]he *Davis* and *Ferrara* decisions[14] fashioned a general rule on the use of a juvenile record to show bias, . . . they did not provide a defendant an absolute right to impeach a witness by proof of past delinquencies . . . . When the issue arises, the principal inquiry is whether the witness's juvenile record has a rational tendency to show bias on his or her part . . . . If the record has no such tendency, it is not error to exclude it." (Citations omitted.) *Commonwealth* v. *Bembury*, 406 Mass. 552, 558 (1990).[15] After examining Spino-

---

[14]*Davis* v. *Alaska*, 415 U.S. 308 (1974). *Commonwealth* v. *Ferrara*, 368 Mass. 182 (1975).

[15]The defendant's argument that *Bembury* is no longer good authority because it was decided before the 1991 amendment to G. L. c. 119, § 60, is not correct. That St. 1991, c. 488, § 1, by amendment, made clear that a delinquency adjudication "*may* be used for impeachment purposes in subsequent delinquency or criminal proceedings in the same manner and to the same extent as prior criminal convictions" (emphasis added), does not change the rationale of the case, that there is no absolute right to such use.

la's juvenile record,[16] we conclude that there was no such tendency here. Therefore, counsel was not ineffective for failing to impeach Spinola with the delinquency adjudication.

The defendant's related claim — that his trial attorney did not impeach Spinola with unrelated open criminal charges[17] — similarly fails. There was no material difference between the descriptions Spinola gave before the initiation of the subject pending charges and the trial testimony he rendered after initiation of these charges. Both Spinola's initial descriptions, including his identification on the day of the crime placing the defendant in the car during the initial confrontation, and his similar description and identification repeated later at the grand jury, preceded the initiation of the unrelated pending charges against Spinola. Both were also in accord with his trial testimony given after the unrelated pending charges were filed. Even if we assume, without deciding, that counsel should have sought to impeach Spinola with the pending charges, where "[t]here clearly exists in the record sufficient consistency between [the witness's] pretrial identification of the defendant and his testimony at trial . . . [an] otherwise unsatisfactory handling of the impeachment issue [relating to pending charges] does not require a new trial." *Commonwealth* v. *Hamilton*, 426 Mass. 67, 74 (1997).

In the final analysis, "[i]mpeachment of a witness is, by its very nature, fraught with a host of strategic considerations." *Commonwealth* v. *Fisher*, 433 Mass. 340, 357 (2001). Generally the mere failure to impeach a witness does not prejudice the defendant or constitute ineffective assistance. *Ibid.* See

Nor does it change the result here that it was not ineffective assistance to fail to impeach with the prior adjudication.

[16]The record has been impounded.

[17]The defendant has not offered any showing that there was any promise, reward or inducement relating to the pending charges. "[I]n the absence of evidence 'indicat[ing] the strong possibility that the witness [was] cooperating with the prosecution in exchange for leniency,' . . . or that inducements had been offered or promises made, we cannot say that counsel's failure to attempt to show bias was 'manifestly unreasonable.' See *Commonwealth* v. *Daigle*, 379 Mass. 541, 545-546 (1980) (counsel justifiably declined to press claim that witness exchanged testimony for leniency where 'evidently no such arrangement existed')." (Citation omitted.) *Commonwealth* v. *Roberts*, 423 Mass. 17, 21 (1996).

*Commonwealth* v. *Bart B.*, 424 Mass. 911, 916 (1997). That principle is applicable to this record.

(iii) *Mugshot reference.* This ineffective assistance claim is based on the failure of counsel to object to a passing reference in Detective Gillespie's testimony that Spinola had looked at "[a] book of mugshots" at the police station. As the motion judge noted, the detective did not testify that Spinola identified the defendant in the book of mugshots or even that the defendant's photograph was in the book. Moreover, while objection was not stated in open court, there was a conference at side bar wherein the judge admonished the prosecutor; the mugshot photograph was not admitted in evidence, and there was no further reference to it. Given the isolated reference, counsel reasonably may have decided not to call further attention to it by either objection or request for limiting instruction. *Commonwealth* v. *Fredette*, 396 Mass. 455, 466 (1985).

(iv) *The prosecutor's closing.* The defendant contends that his counsel should have objected to the prosecutor's impermissible reference to excluded evidence in the remark that the "street smart" Spinola "was right in this case, [when he] assumed [there] was a gun" wrapped in the sweatshirt. We do not find the reference improper, and hence the failure to object was not ineffective assistance. "Counsel are entitled to argue reasonable inferences from the evidence, even if those inferences are not inescapable." *Commonwealth* v. *Rivera*, 430 Mass. 91, 101 (1999). Here, defense counsel argued there was no evidence the defendant had a gun in his possession. In response, the prosecutor reasonably could urge the jury to draw a contrary inference based on the evidence that immediately after threatening Spinola, the defendant opened the car trunk and grabbed the black shirt with an object apparently hidden therein; the defendant made this movement in so threatening a manner that Spinola and Silva fled post haste; within seconds of the retreat, gunshots emanated from the car; and the defendant admitted that he was present in the car.

In addition, the defendant contends the prosecutor made an impermissible reference to his failure to testify in recounting that the eyewitness Miller had testified that the driver was the shooter "not the passenger, as Sammy Ortiz told you." The is-

sue is whether the challenged remark, when viewed "in the context of the entire argument . . . [is] directed more at the general weakness of [the] defense than toward the defendant's own failure to testify." *Commonwealth* v. *Storey*, 378 Mass. 312, 324 (1979), cert. denied, 446 U.S. 955 (1980). Viewed in context, the reference was not "of such a nature that a jury would naturally and necessarily construe [it] to be directed to the failure of the defendant to testify," and it was not prejudicially unfair. *Commonwealth* v. *Grant*, 418 Mass. 76, 83 (1994), quoting from *Commonwealth* v. *Smallwood*, 379 Mass. 878, 892 (1980). Counsel's response to the prosecutor's closing argument, or lack thereof, was not ineffective.[18]

4. *The jury instruction on assault and battery with a dangerous weapon.* In his direct appeal, the defendant contends that the judge imported an erroneous general intent standard into and "contaminated" the instruction on assault and battery with a dangerous weapon, thereby reducing the Commonwealth's burden of proof for the intentional touching element. There was no objection at trial. Accordingly, our inquiry is narrowed: was there error and, if so, did it give rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999).

General intent was addressed much earlier in the charge in connection with the instructions on armed assault with intent to murder. Contrary to the defendant's contention, the judge did not repeat the general intent definition when instructing on assault and battery with a dangerous weapon. Rather, after properly instructing on these elements,[19] the judge turned to the doctrine of transferred intent. In so doing, the judge, in a

---

[18]We have reviewed certain other remarks in the closing that are challenged and were the subject of briefing. We do not discern vouching; other remarks were de minimis and were not improper (e.g., where the defendant lived). Still other references to the closing are merely warehoused in a footnote in the defendant's brief. As such, they were not properly presented on appeal and are deemed waived. Mass.R.A.P. 16(a)(4). See note 13, *supra*.

[19]The instruction on assault and battery with a dangerous weapon correctly charged that the Commonwealth had to prove beyond a reasonable doubt "that the defendant touched the person of the alleged victim, however slightly, without . . . reason or excuse to do so, . . . that the touching was intentional in the sense that it did not happen accidentally . . ., [a]nd . . . [that] . . . the touching was done with a dangerous weapon."

transitional phrase, referenced the single word "intent." Nevertheless, because assault and battery with a dangerous weapon is a general intent crime, *Commonwealth* v. *Ford*, 424 Mass. 709, 711 (1997), we assume some carryover of the prior general intent definition.

We agree with the defendant that the trial judge erred when he instructed, "General intent is when we do things more or less by reflex." This language was held to be error in *Commonwealth* v. *Gunter*, 427 Mass. 259, 269 (1998). However, in *Gunter*, the court affirmed the conviction, holding that, notwithstanding the error, "[the] instructions adequately stated that the Commonwealth had to prove the requisite state of mind to commit the . . . felony [here, an intentional touching with a dangerous weapon]. In light of the jury instructions as a whole, any error in the instruction on general intent . . . [did] not rise to the level of a substantial likelihood of a miscarriage of justice." *Id.* at 269-270. A similar result obtains here. Following the instruction on transferred intent, the judge correctly repeated the instruction on assault and battery with a dangerous weapon, again reiterating that the jury must find an intentional touching beyond a reasonable doubt and that the touching did not "happen accidentally." Compare *Commonwealth* v. *Ford*, 424 Mass. at 711-712; *Commonwealth* v. *Garofalo*, 46 Mass. App. Ct. 191, 193-194 n.3 (1999). As given, the instruction on assault and battery with a dangerous weapon addressed the "requisite state of mind" concerning the intentional touching with the weapon and did not give rise to a substantial risk of a miscarriage of justice.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*

*Order denying motion for postconviction discovery affirmed.*