COMMONWEALTH *VS.* HAP LAY

(and four companion cases[1]).

No. 02-P-1503.

Middlesex. June 4, 2004. - February 14, 2005.

Present: GRASSO, COWIN, & KAFKER, JJ.

*Armed Assault with Intent to Murder. Mayhem. Assault and Battery by Means of a Dangerous Weapon. Grand Jury. Practice, Criminal,* Grand jury proceedings, Dismissal, Severance, Discovery, Motion to suppress, Required finding, Instructions to jury. *Evidence,* Grand jury proceedings, Testimony before grand jury, Exculpatory, Identification, Videotape. *Dangerous Weapon.*

A criminal defendant failed to demonstrate that the prosecutor deceived a grand jury with respect to the gang membership of three individuals so as improperly to obtain indictments against the defendant, where there was no evidence that the Commonwealth knew about the gang membership of the three individuals, and where their gang membership had no bearing on the indictments that were sought and returned [30-31]; likewise, the defendant failed to demonstrate that the prosecutor presented false testimony at a suppression hearing regarding the gang membership of two witnesses, where the fact that the two witnesses testified differently about their gang membership at that hearing than at trial did not by itself establish that the Commonwealth knew, or reasonably should have known, that the earlier testimony was false [31-32].

There was no merit to a criminal defendant's argument that the judge's denial of a motion to sever subjected the defendant to incriminating statements by one of his codefendants, where that codefendant testified and was available for cross-examination; further, the denial of severance did not subject the defendant to a trial in which he was prejudiced by the presentation to the jury of antagonistic defenses. [32-33]

There was no evidence that the Commonwealth at a criminal trial failed to disclose promises, rewards, or inducements offered by police officers in exchange for the testimony of two witnesses. [33-34]

The judge hearing a motion to suppress evidence of identifications of the criminal defendant did not err in denying the motion without holding an evidentiary hearing, where the fact that the identification witnesses had previously discussed the incident in question with each other and with other people did not provide a basis for concluding that the identification procedure itself was suggestive. [34-35]

At a criminal trial, the judge acted within his discretion in admitting in

---

[1]Two against Hap Lay and two against Loch Youk.

evidence a videotape showing a bullet on a dance floor, where despite general agreement among the witnesses that gunshots had occurred during the fight in question, there was no evidence that the defendant had fired any gunshots. [35]

At the trial of indictments charging the defendant with, inter alia, mayhem and assault and battery by means of a dangerous weapon (a shod foot), the judge properly denied motions for a required finding of not guilty made at the close of the Commonwealth's case and again at the close of all of the evidence, where the required intent for the mayhem charge could be inferred from the severity and extent of the injuries, and where there was sufficient evidence to permit the jury to convict the defendant on the charge of assault and battery by means of a shod foot on a joint venture theory, in that they could have found that the defendant was present, that he either intended to commit the crime himself or knew that another intended to commit the crime, and that by agreement he was willing and available to assist if necessary. [35-36]

At the trial of indictments charging the defendant with, inter alia, assault and battery by means of a dangerous weapon (a shod foot), the judge properly instructed the jury that they were to decide whether, in the circumstances, a shod foot was a dangerous weapon as used. [36-38]

INDICTMENTS found and returned in the Superior Court Department on December 16, 1998.

A motion to dismiss was heard by *Thomas E. Connolly*, J.; pretrial motions to suppress evidence were heard by *Thayer Fremont-Smith*, J., and *Judith Fabricant*, J.; a motion for relief from prejudicial joinder was heard by *Ralph D. Gants*, J., and the cases were tried before him.

*Karl R.D. Suchecki* for Loch Youk.

*Lisa J. Stephani* for Hap Lay.

*Afton M. Templin*, Assistant District Attorney, for the Commonwealth.

COWIN, J. In the aftermath of a fight at the Lowell Elks Club, defendants Hap Lay and Loch Youk were each indicted for armed assault with intent to murder pursuant to G. L. c. 265, § 18(b), mayhem pursuant to G. L. c. 265, § 14, and two counts of assault and battery by means of a dangerous weapon (metal object and shod foot) pursuant to G. L. c. 265, § 15A(b). After a jury trial, Lay was convicted of the lesser included offense of armed assault with intent to kill, as well as mayhem and assault and battery by means of both of the dangerous weapons identified in the indictments. The trial judge set aside the conviction

of assault and battery by means of a metal object as duplicative of the mayhem conviction. The jury acquitted Youk with respect to the indictments for armed assault with intent to murder and mayhem, convicting him of assault and battery by means of a dangerous weapon (shod foot) and the lesser included offense of assault and battery. Each defendant appealed.[2]

Lay asserts multiple grounds for reversal, including (1) failure of the trial judge to dismiss the indictments or sanction the Commonwealth for presenting alleged misleading testimony to the grand jury, as well as false testimony at a suppression hearing; (2) denial of his motion to sever, thereby allegedly subjecting him to both antagonistic defenses and inculpatory statements by his codefendants; (3) the Commonwealth's alleged failure to produce, prior to trial, exculpatory evidence of rewards, promises, or inducements to two of its witnesses; (4) denial of his pretrial motion to suppress allegedly unfairly suggestive identifications and of his objection at trial to the admission of certain videotape evidence; (5) denial of his motion for required findings of not guilty; and (6) the cumulative effect of judicial error and prosecutorial misconduct. Youk appeals on a single ground, i.e., that the judge erroneously failed to submit to the jury, and to provide appropriate instructions thereon, the question whether Youk's shod foot was a dangerous weapon as used. We conclude that there was no error, and accordingly affirm the convictions of both defendants.

*Relevant facts.* The jury could permissibly have found the following relevant facts. On Halloween night, 1998, the victim, Ol Ouern, and certain of his friends (including witnesses John Nun and Yarith Ny) attended a party at the Lowell Elks Club. Defendant Lay, as well as codefendants San Sin and Chheuy Than, were standing together in the front lobby, and Nun observed Lay remove a metal object from his pants and place it in his sleeve. The metal object was described at different times during the trial as a tire iron, a crowbar, a prybar, and a metal pipe.

---

[2]The two defendants were tried with three codefendants. San Sin, Chheuy Than, and Marin Sok were each convicted of assault and battery by means of a dangerous weapon (shod foot) and the lesser included offense of assault and battery. Than and Sok did not appeal. Sin appealed, but the appeal was dismissed by this court for failure to prosecute.

An argument between Sin and another man soon broke out, and two groups formed. Sin threw a punch; someone else threw a chair; and another man, Thol May, fired three gunshots at the ceiling, then fired another shot into the crowd of people, many of whom hurried to the doors. Nun and the victim moved outside to a cement platform, followed by five or six men, including the defendants, Lay and Youk. Nun and codefendant Marin Sok started to fight. Simultaneously, Lay removed the metal object from his sleeve and struck the victim on the head with sufficient force that both blood and brain matter sprayed out. Lay then went after Nun with the metal object, while Youk and codefendants Sin and Than kicked the victim, now prostrate on the ground.

Lowell police Detective Phillip Conroy arrived on the scene as fights continued to break out. He briefly chased after the shooter, but abandoned the pursuit to assist the victim who was again under attack by the defendants and the codefendants. On the night in question, Nun identified Than, Sok, and Youk as the victim's attackers, and Nun and Ny together identified Sin and Youk. Subsequently, Nun and Ny picked Lay and Sin from photographic arrays. The victim suffered a skull fracture with accompanying depression into the brain, injuries that a treating neurosurgeon characterized as consistent with being hit by a metal object.

*Discussion.* 1. *Testimony at grand jury and suppression hearing.* Lay asserts first that the prosecutor deceived the grand jury with respect to the gang membership of three individuals: Ouern (the victim) and witnesses Nun and Ny.[3] Asked by a grand juror whether Lay was a gang member, Ouern answered, "Yeah, I know that they were in the same gang because . . . ," at which point the prosecutor instructed Ouern not to complete the answer. Lay contends that the Commonwealth knew that the victim and his companions were gang members, and sought to conceal the information because disclosure would make them less sympathetic in the eyes of the grand jury. Lay equates this with unlawful withholding of exculpatory evidence, see *Commonwealth* v. *Daye*, 435 Mass. 463, 467 (2001), and impairing

---

[3]Although Lay in his brief indicates that all three testified before the grand jury, in fact, Ouern was the only civilian witness the grand jury heard.

of the integrity of the grand jury, see *Commonwealth* v. *Ortiz*, 53 Mass. App. Ct. 168, 174 (2001).

Lay has not previously sought dismissal of the indictments on the ground of an improper presentation to the grand jury. See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982); *Commonwealth* v. *O'Dell*, 392 Mass. 445, 449-450 (1984). Any complaint regarding the obtaining of the indictments thus appears to have been waived. See *Commonwealth* v. *Taylor*, 32 Mass. App. Ct. 570, 580 (1992). We are not persuaded by Lay's proposition, advanced without authority, that the trial judge should have dismissed sua sponte.

Passing the question of waiver, there is no basis in existing law for concluding that these indictments were improperly obtained. To obtain a dismissal on the ground that false or deceptive evidence has been presented to the grand jury, a defendant must demonstrate first that such false or deceptive evidence was presented knowingly and for the purpose of obtaining an indictment, and then that such presentation probably influenced the grand jury to return the indictment in question. See *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986); *Commonwealth* v. *Ortiz, supra*. Lay has shown neither. Gang membership on the part of the victim and his friends was not shown to have been known by the Commonwealth, and had no bearing on the indictments that were sought and returned. Lay's contention that the prosecutor cut off Ouern's answer in order to conceal information unfavorable to the Commonwealth is wholly speculative; it is far more likely that the prosecutor's purpose was to exclude irrelevant, possibly prejudicial, testimony.

In a related argument, Lay accuses the prosecutor of presenting false testimony at a suppression hearing. At the hearing on a motion of Youk and codefendant Sin to suppress a drive-by identification, Nun denied being a gang member himself, and Ny denied that he had friends who were in gangs. Lay asserts that the prosecutor permitted the witnesses to testify in this way knowing the testimony to be false, as evidenced by the fact that the prosecutor later at trial stated that Nun and Ny would testify to gang involvement.

That the witnesses altered their testimony between the sup-

pression hearing and the trial does not by itself establish that the Commonwealth knew, or reasonably should have known, that the earlier testimony was false. See *Commonwealth* v. *McLeod*, 394 Mass. 727, 743-744, cert. denied sub nom. *Aiello* v. *Massachusetts*, 474 U.S. 919 (1985). Lay has made no showing that the prosecutor had knowledge of the witnesses' gang membership at the time they responded to questions on the subject by defense counsel. Furthermore, the defendant could have cross-examined the witnesses on the basis of their prior inconsistent testimony. We note also that the only relief that Lay requested on the subject was an instruction that informed the jury that the Commonwealth's witnesses had previously testified falsely under oath. The judge correctly declined to give such an instruction. See *Commonwealth* v. *Figueroa*, 413 Mass. 193, 197-198 (1992), *S.C.*, 422 Mass. 72 (1996) (concern that singling out particular witness's testimony may intrude on jury's fact-finding function).

2. *Motion to sever.* Lay next challenges the trial judge's denial of a motion to sever filed by one of the codefendants, in which Lay joined. He asserts in this regard that he was subjected to incriminating statements by one of the codefendants in violation of his rights under *Bruton* v. *United States*, 391 U.S. 123, 126 (1968). He argues also that the refusal to sever denied him a fair trial because the jury heard antagonistic defenses. We disagree with both propositions.

With respect to his *Bruton* argument, Lay cites testimony by codefendant Than exculpating himself (Than) and responding to the alleged view of Detective Conroy that Lay was actually the perpetrator of the attack on the victim. This does not strike us as the kind of incriminating statement to which *Bruton* is directed, given that Than responded passively to the accusations of another[4] and did not himself accuse Lay of being the attacker. Even if that were not the case, *Bruton* does not apply in these circumstances. "The *Bruton* rule is concerned only with inculpatory statements of a codefendant who is unavailable for cross-examination." *Commonwealth* v. *Johnson*, 412 Mass. 318, 322

---

[4]Than's testimony on the point was essentially that, if Detective Conroy knew that Lay committed the attack, he should go and arrest Lay and leave Than alone.

(1992). Here, Than testified at the trial and was available for cross-examination. Lay in effect requests that we expand *Bruton* to testimony and circumstances to which it was never intended to apply.

In the alternative, Lay argues that the denial of severance subjected him to a trial in which he was prejudiced by the presentation to the jury of antagonistic defenses. Notwithstanding the fact that Lay did not assert this contention at trial, we address the merits and conclude that the defenses were not antagonistic and that Lay was not denied a fair trial by having them presented to the jury simultaneously. Requests for severance are ordinarily committed to the sound discretion of the trial judge, and a motion based on the potential of antagonistic defenses must be allowed only if those defenses conflict to the point of being irreconcilable. See *Commonwealth* v. *McAfee*, 430 Mass. 483, 485-486 (1999). In the present case, Lay and the codefendants each took the position that he was present at the scene but did not harm the victim. Lay and the codefendants defended themselves without implicating each other, *ibid.*, and the jury could logically have adopted all defense propositions.

Nor are we persuaded by other arguments that Lay groups together under the rubric of antagonistic defenses requiring severance. Lay's stated concern that he was victimized by being tried with four others in circumstances that suggested that the prosecution arose out of gang activity and that Lay was a gang member is not borne out by a record that contains no evidence or argument that gang activity was involved. This differs considerably from *Commonwealth* v. *Wolcott*, 28 Mass. App. Ct. 200, 204-206 (1990), relied on by Lay, in which a witness actually identified the defendants as members of a Jamaican gang. That the codefendants here focused on the severity of the victim's injuries, in an effort to make a case that police officers failed to conduct testing that could have exonerated them, see *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980), did not implicate Lay. Nor is it relevant that Lay was sentenced more harshly than the codefendants, hardly a surprising result, given that he was convicted of more serious offenses.

3. *Promises, rewards, or inducements.* Lay charges that the Commonwealth withheld exculpatory evidence in violation of

*Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), and Mass.R.Crim.P. 14(a)(1)(C), 378 Mass. 874 (1979), in that it failed to disclose promises, rewards, or inducements offered by police officers in exchange for the testimony of two witnesses. Because Lay did not raise the issue at trial, we could treat it as waived. Addressing the merits, however, the only evidence on the subject was that witness Ny and Detective Conroy, among other guests, attended a cookout months *before* the incident leading to the indictments, at which Conroy gave Ny money to buy beer. We fail to see the connection between this payment and testimony subsequently given by Ny in connection with offenses that had yet to be committed when the payment was made. Lay also posits an ongoing relationship between Detective Conroy and witnesses Nun and Ny, but points to no evidence that involved the giving of any consideration in return for testimony. Nor has Lay shown that the fact of the relationship, if it existed, constituted exculpatory evidence for other reasons. Lay's reference to "likely other exculpatory evidence" not produced by the Commonwealth is equally baseless.

We observe also that Lay made no specific request for evidence of promises, rewards, or inducements. While that would not absolve the Commonwealth of its obligation to turn over the details of an actual quid pro quo for testimony, it does influence the standard by which we review a failure to disclose. "[T]he test is whether the undisclosed evidence creates a 'reasonable doubt that did not otherwise exist.' " *Commonwealth* v. *Gallarelli*, 399 Mass. 17, 21 (1987), quoting from *Commonwealth* v. *Wilson*, 381 Mass. 90, 110 (1980). Here, the jury heard the testimony regarding the purchase of beer and was fully able to evaluate whether there was a compromising effect on Ny's testimony.

4. *Evidentiary issues.* Lay assigns as error the motion judge's denial, without an evidentiary hearing, of his motion to suppress identifications of him as the perpetrator obtained by police officers from witnesses Nun and Ny. Nun and Ny also identified Lay subsequently at trial. Lay asserts that suggestive circumstances attending the identifications rendered them unreliable and called for their suppression. He also argues that the trial judge abused his discretion in admitting a redacted

videotape of the fight scene that showed an allegedly prejudicial image of a bullet on the dance floor.

Turning first to the question of the identifications, they came about when, subsequent to the fight, Nun and Ny gave police officers separate written statements identifying Lay as the attacker. Each also selected Lay's picture from a photographic array. Lay characterizes as "highly suggestive" the fact that Nun and Ny had previously discussed the fight with each other, as well as with fifteen to twenty other people at a meeting. Those circumstances do not provide a basis for concluding that the identification procedure itself was suggestive. Given that Lay's showing did not establish a triable issue of suggestiveness, it was within the motion judge's authority to decide the motion without an evidentiary hearing. See *Commonwealth* v. *Walker*, 421 Mass. 90, 94 (1995).

With respect to admission of the videotape, the trial judge determined that it accurately depicted the scene and that it was relevant as probative of the atmosphere that existed at the time of the fight. Having already excluded evidence pertaining to gangs, the judge required that pictures of gang "taggings" be redacted. In addition, the parties agreed that pictures of a machete and knives would also be eliminated. Although Lay did not object at trial to admission of the redacted videotape, he now maintains that the redactions did not go far enough because the bullet image was not removed.

We conclude that the judge acted within the permissible scope of discretion. While there was general agreement among the witnesses that gunshots had occurred during the fight, there was no evidence that Lay had fired any of the gunshots. Thus, the picture of the bullet was at most cumulative. Lay was not charged with a firearms violation, and nothing at trial linked him in any way to firearms or the gunshots. We are not persuaded by Lay's supposition that the jury convicted him because they believed he had committed a firearms violation.

5. *Motion for required findings.* At the close of the Commonwealth's case, and again at the close of all of the evidence, Lay moved unsuccessfully for required findings of not guilty. While the motion in the trial court was addressed generally to all of the indictments, on appeal he focuses only on the charges

of mayhem and assault and battery by means of a dangerous weapon (shod foot).

With respect to the mayhem indictment, the Commonwealth proceeded under that portion of G. L. c. 265, § 14, that provides that "whoever, with intent to maim or disfigure, assaults another person with a dangerous weapon . . . , and by such assault disfigures, cripples or inflicts serious or permanent physical injury upon such person, . . . shall be punished." "[I]ntent may be inferred from the nature of the injuries inflicted on the victim." *Commonwealth* v. *Johnson,* 60 Mass. App. Ct. 243, 246 (2003). While mayhem often features a sustained assault, from which an inference that a defendant intended to maim or disfigure can permissibly be drawn, see *Commonwealth* v. *Cleary,* 41 Mass. App. Ct. 214, 217-218 (1996), a sustained attack is not a legal prerequisite. Here, the judge correctly concluded that the required intent could be inferred from the severity and extent of the injuries. Thus, we see no relevance in Lay's focus on the alleged lack of reliability of Nun's testimony that the victim was struck more than once (the witness's credibility being for the jury to assess in any event).

Likewise, the evidence was sufficient to support, on a joint venture theory, the conviction of assault and battery by means of a shod foot. Lay challenges the verdict as based on the less than credible testimony of Nun and Ny. Questions of credibility are not for the judge on a motion for a required finding. See *Commonwealth* v. *Quinn,* 61 Mass. App. Ct. 332, 334 (2004). Resolving all questions of credibility in favor of the Commonwealth, see *Commonwealth* v. *Jones,* 432 Mass. 623, 625 (2000), the jury could permissibly find that Lay was present, that he either intended to commit a crime himself or knew that another intended to commit the crime, and that by agreement he was willing and available to assist if necessary. See *Commonwealth* v. *Carroll,* 439 Mass. 547, 553 (2003).

6. *Cumulative effect of errors.* Given our conclusion that there was no error in the proceedings involving Lay, it is unnecessary to address his contention that the cumulative effect of errors denied him a fair trial. See *Commonwealth* v. *Gagliardi,* 418 Mass. 562, 572 (1994), cert. denied, 513 U.S. 1091 (1995).

7. *Youk's appeal: instructions on assault and battery by*

*means of a dangerous weapon.* Youk appeals on the sole ground that the trial judge instructed erroneously on the charge of assault and battery by means of a dangerous weapon (shod foot).[5] He acknowledges that he lodged no objection to the instruction when it was given, but contends that the error was sufficiently significant that it created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Wen Chao Ye*, 52 Mass. App. Ct. 850, 858 (2001). We discern no error.

Youk argues that the judge failed to inform the jury adequately that they were to decide whether in the circumstances a shod foot was a dangerous weapon as used. We agree that a shod foot is not dangerous per se, see *Commonwealth* v. *Tevlin*, 433 Mass. 305, 310 (2001), and that whether it was dangerous as used is a question of fact, see *Commonwealth* v. *Appleby*, 380 Mass. 296, 307 n.5 (1980). We are not persuaded, however, by Youk's argument that the judge misled the jury into believing that the dangerousness of the weapon was already established and that only the question whether Youk actually kicked the victim with his shoe remained for them to decide.

The judge had occasion to define the term "dangerous weapon" when he instructed on the indictments charging armed assault with intent to murder. At that time, he stated that the second element that the Commonwealth was required to prove was that the defendant was armed with a dangerous weapon, which he proceeded to define correctly as "any instrument which, by the nature of its construction or the manner of its use, is capable of causing grievous bodily injury or death or could be perceived by a reasonable person as capable of causing such injury." See *Commonwealth* v. *Powell*, 433 Mass. 399, 402 & n.2 (2001). That instruction could not have created uncertainty in a reasonable juror that the jury were expected to decide whether the instrument with which Youk was armed qualified as a dangerous weapon under the definition provided.

When the judge later addressed the charge of assault and battery by means of a dangerous weapon (shod foot), he referred back to the earlier instruction regarding a dangerous weapon in

---

[5]Youk has not challenged his conviction of simple assault and battery as a lesser included offense of assault and battery by means of a dangerous weapon (metal object).

the context of the armed assault with intent to murder indictments. He was not required to give the instruction again. Nevertheless, he effectively did so when he instructed the jury on the lesser included offense of assault and battery, stating that if the Commonwealth proved the first four elements of assault and battery by means of a dangerous weapon, but failed to prove that the touching was committed with a dangerous weapon, the jury could find the defendant guilty of the lesser included offense. In examining the instructions as a whole, see *Commonwealth* v. *Smiley*, 431 Mass. 477, 487 (2000), we are satisfied that the jury got the point that they were to decide whether Youk's shoe as used was a dangerous weapon. There being no error, it follows that there was no substantial risk of a miscarriage of justice.

*Judgments affirmed.*