A jury found the juvenile delinquent on one count of indecent assault and battery on a child under age fourteen, G. L. c. 265, § 13B. The juvenile (represented by new counsel) filed a motion for new trial on the ground that his trial counsel provided him with ineffective assistance. After a hearing at which trial counsel testified, the motion judge, who was not the trial judge, allowed the juvenile's motion. The Commonwealth claims that the judge's allowance of that motion constituted error.[2] We affirm.
Background. We relate the facts the jury could have found. The alleged victim, whom we shall refer to as Michael,[3] was a thirteen year old boy with Asperger's syndrome, a form of autism. In January, 2010, a disagreement between Michael and his mother about discipline escalated to the point where Michael threatened suicide. Fearing for his safety, his mother took him to the hospital and then to the Brien Center, a psychiatric treatment facility for children and teenagers. That evening, the staff assigned Michael to a double room with the juvenile, who was asleep. Michael fell asleep, but awoke to see the juvenile get out of bed, take off his clothes, and enter Michael's bed. The juvenile grabbed Michael by the arms, got on top of him, and put his hands down Michael's boxer shorts. The juvenile then flipped him over, whereupon Michael passed out. The next day, Michael went home, where he disclosed to his mother, the first complaint witness, what had happened.
Discussion. The motion judge agreed with the juvenile that his trial counsel was ineffective for eliciting cross-examination testimony from the mother and Michael-neither of whom counsel interviewed-and from other witnesses about Michael's repeated accusation of sexual assault, in violation of the first complaint doctrine. The motion judge also faulted trial counsel for failing to exploit discrepancies between the mother's trial testimony and her written statement taken by Detective Eason, when counsel unreasonably elected not to pose a single question to the detective about any of the discrepancies, which the mother had dismissed as "mistakes made by the detective" or his "misunderstandings."
1. Standard of review. We review a judge's allowance of a motion for new trial "to determine whether there has been a significant error of law or other abuse of discretion." Commonwealth v. Grace, 397 Mass 303, 307 (1986). We will accept the motion judge's findings of fact, absent clear error, and independently review her conclusions of law. Commonwealth v. Scott, 440 Mass. 642, 646 (2004).
We review claims of ineffective assistance of counsel using the familiar two-prong test outlined in Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). In order to prevail on a motion for a new trial, a defendant must demonstrate (1) that defense counsel's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer," and (2) that counsel's conduct was prejudicial in that it "likely deprived the defendant of an otherwise available, substantial ground of defence." Ibid. With respect to the second requirement, "there ought to be some showing that better work might have accomplished something material for the defense." Commonwealth v. Satterfield, 373 Mass. 109, 115 (1977). The burden is on the defendant to meet both prongs of the test. Commonwealth v. Peloquin, 437 Mass. 204, 210 (2002).
Judicial scrutiny of counsel's performance is highly deferential, and we "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 690 (1984). "An attorney's tactical decision amounts to ineffective assistance of counsel only if it was manifestly unreasonable when made." Commonwealth v. Martin, 427 Mass. 816, 822 (1998). "Only 'strategy and tactics which lawyers of ordinary training and skill in the criminal law would not consider competent' are manifestly unreasonable." Commonwealth v. Zagrodny, 443 Mass. 93, 98 (2004), quoting from Commonwealth v. Levia, 385 Mass. 345, 353 (1982).
2. First complaint doctrine violations. The first complaint doctrine was created to allow "the person who was first told of [an] assault, [to] ... testify to the details of the alleged victim's first complaint of sexual assault and the circumstances surrounding that first complaint as part of the prosecution's case-in-chief." Commonwealth v. King, 445 Mass. 217, 243 (2005), cert. denied, 546 U.S. 1216 (2006). Allowing the prosecution one first complaint witness achieves the principal goal of the doctrine, "which is to refute any false inference that silence is evidence of a lack of credibility on the part of [sexual assault] complainants." Ibid. The first complaint doctrine also serves to limit the "piling on" of multiple complaint witnesses, id. at 245, who "likely serve[ ] no additional corroborative purpose, and may unfairly enhance a complainant's credibility as well as prejudice the defendant by repeating for the jury the often horrific details of an alleged crime." Id. at 243. A first complaint witness may testify to "the details of the complaint itself," including "the complainant's statements of the facts of the assault." Id. at 244, quoting from Commonwealth v. Quincy Q., 434 Mass. 859, 874 (2001). The details of the first complaint may also include "why the complaint was made at that particular time." Id. at 245. The details do not include whether the complainant told others of the assault, "even where the details of the conversation have been omitted." Commonwealth v. Aviles, 461 Mass. 60, 68 (2011). This includes whether the police or other officials were told of the alleged assault. See Commonwealth v. Stuckich, 450 Mass. 449, 457 (2008) ("The fact that the Commonwealth brought its resources to bear on [an] incident creates the imprimatur of official belief in the complainant").
In this case, we agree with the motion judge that trial counsel elicited cross-examination testimony from Michael that fell well outside the scope of the first complaint doctrine. In a futile attempt to impeach Michael-whom he had not interviewed-trial counsel cross-examined Michael regarding details of the assault that he told to the investigator. In addition, trial counsel elicited that Michael discussed the assault with "a few different people" shortly after it happened. Trial counsel did not seek to have these answers stricken, leaving the jury with seemingly consistent accounts of the assault told to persons other than the first complaint witness. By persisting in this line of cross-examination, trial counsel impermissibly permitted Michael to inform the jury that he consistently described the assault to multiple people. See Commonwealth v. King, 445 Mass. at 243. Trial counsel also elicited testimony from the first complaint witness, the mother, that fell outside the scope of the first complaint doctrine. Trial counsel cross-examined the mother at length about her written statement to Detective Eason repeating what Michael relayed to her about the assault. Counsel also asked the mother about her communications about the assault with Detective Eason and members of the district attorney's office.
The mother's written statement, her testimony about the details of Michael's sexual assault set forth in that statement, and her testimony about her communications with police and members of the district attorney's office about Michael's report to her, all combined to suggest that the Commonwealth believed and gave weight to Michael's report in violation of the first complaint doctrine. See Commonwealth v. Aviles, 461 Mass. at 68. This created "the imprimatur of official belief in the complainant" cautioned against in Commonwealth v. Stuckich, 450 Mass. at 457.
3. Failure to present impeachment evidence. "Impeachment of a witness is, by its very nature, fraught with a host of strategic considerations...." Commonwealth v. Fisher, 433 Mass. 340, 357 (2001). When a defendant alleges that counsel failed "to pursue some obviously powerful form of impeachment," we look to determine whether "a different approach to impeachment would likely have affected the jury's consideration." Ibid.
Here, beyond the multiple violations of the first complaint doctrine, the mother's trial testimony directly contradicted parts of her written statement to Detective Eason. In particular, her written statement recited that she read it before she signed it. Yet when cross-examined by trial counsel about contradictions of her statement she made during her testimony on direct examination, she put the blame on Eason for making mistakes and misunderstanding her, and claimed she signed it without reading it.[4] We agree with the motion judge that trial counsel's failure to impeach the mother by not questioning Eason about any of the mother's contradictions of the statement she gave him exacerbated the harmful effect of the improper first complaint testimony.[5]
At the motion hearing, trial counsel testified that he elicited testimony of what the mother told Detective Eason about the sexual assault, because he was planning to impeach her through Eason's expected testimony. Yet, when counsel called Eason to the stand, he never questioned Eason about any of the mother's contradictions of her written statement during her trial testimony. Although counsel testified that he chose not to question the detective about the mother's contradictions because he did not trust the detective, we conclude the motion judge correctly determined that this was not a reasonable course of action, because the result was that the mother's testimony in contradiction of her written statement stood unchallenged. We find no error in the motion judge's findings, and agree that these failures by trial counsel fell well below "that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. at 96.
Whether these errors warranted the allowance of the juvenile's motion for new trial depends, in part, upon the strength of the Commonwealth's case. Commonwealth v. Alphas, 430 Mass. 8, 13 (1999). Here, the strength of the case must be measured by the other evidence presented at trial, namely, the testimony of the other witnesses. Aside from Michael and the mother, none of the witnesses could testify regarding the facts of the alleged assault, as Michael and the juvenile were the only ones present.[6] There was no physical, forensic, or scientific evidence presented at trial. It follows then that the central issue at trial was the credibility of Michael and his mother. See Commonwealth v. Gardner, 350 Mass. 664, 667 (1966) ; Commonwealth v. Stuckich, 450 Mass. at 454 ; Commonwealth v. Velazquez, 78 Mass. App. Ct. 660, 666 (2011). Due to the lack of any other evidence apart from Michael's and the mother's testimony corroborating the sexual assault, we are left with a "serious doubt" as to whether the result of the trial would have been the same had these errors not been made. Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).
Conclusion. We agree with the motion judge that the combined effect of trial counsel's errors-introducing inadmissible first complaint testimony, and failing to impeach the mother's testimony through the detective who took her statement, which she contradicted in her trial testimony-created a substantial risk that a miscarriage of justice occurred, requiring a new trial.
Order allowing motion for new trial affirmed.

The juvenile cross-appeals, alleging that the trial judge's reasonable doubt instruction was erroneous. Since we agree with the motion judge that the juvenile did not receive effective assistance of counsel, we express no opinion on that issue here.

A pseudonym.

Other discrepancies between the mother's statement and her testimony were as follows. Defense counsel asked the mother if she had asked Michael three times whether he had been sexually assaulted, because that was what her statement said. She denied this and said she only asked him once. Defense counsel asked the mother if she had asked Michael on the phone the next morning if someone had touched him inappropriately. She denied doing so. Her statement to police said she did ask him. Defense counsel also asked if she had asked Michael on the ride home whether someone had touched him. Her written statement says she did ask him. She also denied this, saying Detective Eason must have misunderstood her.

It is true that "[g]enerally the mere failure to impeach a witness does not prejudice the defendant or constitute ineffective assistance." Commonwealth v. Ortiz, 53 Mass. App. Ct. 168, 180 (2001). However, for the reasons discussed infra, this is one such a case where "counsel's failure to pursue some obviously powerful form of impeachment" likely affected the jury's conclusion. Commonwealth v. Fisher, 433 Mass. at 357.

In fact, the other witnesses' testimony was largely beneficial to the juvenile's defense. Brien Center staff working that night testified that they performed bed checks every fifteen minutes and did not see the juvenile or Michael out of bed or anything out of the ordinary.